## LUCINDA G. BENT

*v.*

## MARY B. COLEMAN *et al.*

1. MISTAKE—*evidence required to correct.* As against subsequent purchasers and incumbrancers, a mistake in a deed or mortgage will not be corrected without clear and positive averments supported by satisfactory proof.

2. NOTICE—*by facts to put party on inquiry.* A party having notice of such facts as would put a prudent person on inquiry, is chargeable with notice of other facts to which by diligent inquiry and investigation he would have been led.

3. SAME—*of mortgage in which a mistake occurs in description.* Where a mortgage described the land as "beginning two hundreds north of the south-west corner of section number 34," etc., omitting the word "rods" after the word "hundreds," and the deed of the land to the mortgagor, which was recorded, described the land correctly as beginning two hundred rods north of the same corner, and where a subsequent mortgagee knew the land was occupied by the mortgagor as his homestead until after the date of the last mortgage given by him, and for a period of near twenty years, it was *held* that the record, with the other facts, was sufficient to charge the subsequent mortgagee with notice of such prior mortgage, and that it was intended to be upon the same land mortgaged to them.

4. ERROR—*that does not prejudice.* The admission of the wife of a party as a witness, whose testimony is not of a nature to injure the adverse party, is no ground for reversal.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. IRA J. BLOOMFIELD, for the appellant.

Messrs. GAPEN & EWING, and Mr. WALTER M. HATCH, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the McLean circuit court, exhibited by Mary B. Coleman and Louisa B. Blenkison, complainants, and to which Origen M. Coleman, Francis Coleman, Sarah Coleman and Lucinda G. Bent, with others were

made defendants, to foreclose a mortgage alleged to have been executed by Origen M. Coleman to complainants on February 18, 1874, to secure the payment of certain promissory notes executed on that day to complainants, the premises described in the deed of mortgage being lot No. 3 of the north-west quarter of section No. 34, township 24 north, range 2 east of the third principal meridian, containing forty acres of land; also a strip of land part of section 33, excepting out of the first named tract a half-acre tract of land deeded to Myron T. Coleman, describing the same by metes and bounds, all lying in McLean county, State of Illinois.

Francis Coleman and Sarah Coleman put in their answers to the bill, claiming and insisting they had a mortgage on the same premises, executed by O. M. Coleman to them, of a date prior to that of complainants' mortgage, and which was duly recorded, which mortgage was executed to secure the payment of one thousand six hundred dollars which they, as executors of the estate of Martin Coleman, had loaned to the mortgagor, O. M. Coleman. They also filed their cross-bill setting up these facts, alleging that the mortgage was executed to them on May 15, 1873, and recorded on December 26, 1873; that it was intended by said mortgage to convey the same identical tract of land as described in the bill of complaint, but under the following description: Beginning two hundreds north of the south-west corner of section 34, etc., while it was intended the description should be, beginning two hundred rods north of the south-west corner, etc.

The bill prayed for a correction of the mistake, and that their mortgage be decreed a first lien on the premises.

Lucinda G. Bent put in her answer to the original bill and to the cross-bill, claiming and alleging that the indebtedness claimed is fraudulent, and denies that O. M. Coleman ever delivered any valid mortgage to the complainants in either bill, but that O. M. Coleman was justly indebted to her in the sum of one thousand eight hundred and fifty dollars with interest, evidenced by two promissory notes, and on December 10, 1874,

made and delivered to her a mortgage on the property described in the original bill, which was duly recorded; the said indebtedness being for money actually loaned to Coleman, she having no knowledge of the mortgage mentioned in the original bill or cross-bill. This defendant also filed her cross-bill setting up these facts, and claims that her mortgage is superior and prior to the others described and set up in the original and cross bills, and is the first valid lien on the premises, and had no knowledge of any other lien.

This cross-bill was answered by O. M. Coleman, Mary B. Coleman, Francis Coleman and others, claiming that all the interest of Lucinda G. Bent was merged in a deed from Joseph Carter, assignee in bankruptcy of O. M. Coleman, setting out the bankruptcy proceedings, the appointment of Carter as assignee, and a sale by him of the premises to Lucinda G. Bent, and a sale by her to William A. Watson of all her interest in the premises.

There were replications to the answer, and other proceedings not important to notice.

The cause was referred to a special master, to whose report exceptions were filed by Lucinda G. Bent and others, which were disallowed, and the court decreed, among other matters not necessary to notice, that there was due Lucinda G. Bent on her note and mortgage the sum of one thousand nine hundred and sixty-four dollars and twenty-eight cents, and as to the cross-bill of Francis Coleman and Sarah Coleman, the court found the allegations to be true, and that the defendant, Origen M. Coleman, was, on May 15, 1873, indebted to the complainants as executor and executrix of Martin Coleman, deceased, in the sum of one thousand six hundred dollars for borrowed money, and that, to secure the payment of the same, he executed a mortgage to Francis and Sarah Coleman, which was delivered and recorded; that by mutual mistake the description was written, " Beginning two hundreds north of said south-west corner of section 34," whereby the word " rods " was left out after the words "two hundreds,"

and that each and all of the defendants had due notice of the mistake before they acquired any right, title, interest or equity to the premises, and that the land intended to be conveyed by the mortgage was the same land as herein properly above described, and was the same land mortgaged to the other defendants as lot No. 3 of the north-west quarter of section 34, and that the description in the mortgage executed to Francis and Sarah Coleman by Origen M. Coleman, be amended so as to read, "beginning two hundred rods north of the south-west corner of section 34, township 24 north, range 2 east of the third principal meridian, thence north 40 rods, thence east 160 rods, thence south 40 rods, thence west 160 rods to the place of beginning," and that the record of each mortgage be so amended as to conform to this description, and that the same be a first lien on the premises.

From this decree Lucinda G. Bent appeals, and assigns various errors, the most important of which is, altering and correcting the alleged mistake in the mortgage, and making the same a first lien on the premises in controversy.

The doctrine insisted upon by appellant, that, as against subsequent purchasers and incumbrancers, mistakes in a deed will not be corrected without clear and positive averments, supported by satisfactory proof, can not be questioned. It is fully recognized in *Broadwell* v. *Broadwell*, 1 Gilm. 599, in *Hunter* v. *Bilyeu et al.* 30 Ill. 228, and other cases.

We think the evidence is quite satisfactory, there was a mutual mistake in describing the land intended to be conveyed by this mortgage, and that the description should be that found by the court in the decree. But the question remains, and is really the important question, did appellant, by the deed as recorded, have actual or constructive notice which should affect her, she being a subsequent incumbrancer?

O. M. Coleman testifies in the most positive terms, that all three mortgagees, appellant being one, knew he lived on the land mortgaged, and they all knew the premises mortgaged was his home place. Appellant contradicts this, and testifies

the first notice she had of her mortgage was through the mail. She received the recorder's check inclosed in a letter from Mr. Coleman, leaving it to be inferred she was not present and knew nothing about the execution of her mortgage. . Be this as it may, the question recurs, did appellant have constructive notice of this fact? Was there sufficient developed by the record of this mortgage made in December, 1873, some months prior to the execution of her mortgage, to put her upon inquiry to ascertain the true fact?

From *Doyle et al.* v. *Teas et al.* 4 Scam. 202, to *Erickson* v. *Rafferty,* 79 Ill. 209, the doctrine has not been essentially departed from, a party having notice of such facts as would put a prudent person on inquiry, is chargeable with a knowledge of other facts to which by diligent inquiry and investigation he would have been led.

It was said in *Merrick* v. *Wallace,* 19 Ill. 486, that the record of a deed describing premises by an impossible sectional number, was sufficient to put a party purchasing the same quarter upon inquiry, and might amount to notice of a prior grant.

A person about to purchase this tract of land would naturally inquire into the title of the vendor; he would ascertain his source of title. This is the ordinary and usually the first inquiry. By turning to the records he would discover his vendor purchased the land of James Corunda, and received a deed therefor on April 11, 1855, in which the land was described as follows: Commencing two hundred *rods* north of the south-west corner, etc., containing forty acres of land. This deed was filed for record on April 13, 1855, and recorded May 4, 1855, and thereby open to the inspection of all persons. This reference, which a person of the most ordinary prudence would make, would have satisfied a searcher for the truth there was a mistake in the description, and in this case the more especially, as all the mortgagees holding by mortgages subsequent, knew the land mortgaged was the homestead of their grantor. It was a well improved tract, inclosed by a growing hedge, with a comfortable dwelling and other struc-

tures of a permanent and valuable character.  The mortgagor occupied it from the time of his purchase from Corunda to the date of the last mortgage, something like twenty years.  Appellant was familiar with the place, being a frequent visitor there, and knew when she took her mortgage it was his home place, and the record would have told her it was the forty acres he purchased of James Corunda.

There was another item of sufficient importance to put appellant on inquiry.  It appears on November 5, 1855, O. M. Coleman had executed a mortgage on this land, correctly describing it, to his father, Martin Coleman.  On the day the mortgage in question was filed for record, one of the parties therein, Francis Coleman, filed for record a release of this mortgage, as one of the executors of Martin Coleman, deceased, and Sarah Coleman, the executrix of the same, released the mortgage on the margin of the record thereof.  This was done by them as representatives of the estate of Martin Coleman, deceased.  A marginal note of this release was made by the recorder on the record of this defectively described mortgage, being the mortgage in question, and could be plainly seen by every one desirous of ascertaining facts.

We are of opinion, these facts were sufficient to charge appellant with notice of this mortgage, and to inform her that the land conveyed by it was the same land as that described in the deed to her.

We do not deem it necessary to refer to any other fact or circumstance tending to arouse inquiry on the part of appellant, as sufficient appears for that purpose.

Other points are made by appellant,—one, that Lucy M. B. Coleman, the wife of O. M. Coleman, was examined as a witness in behalf of appellees.  We do not perceive that her evidence was of a nature to do any injury to appellant.

In the view we have taken of this case, we do not deem it necessary to inquire into the effect of the purchase by appellant of this land under the sale of O. M. Coleman's assignee under the proceedings in bankruptcy, being well satisfied ap-

pellant had notice of the mistake in the description of the premises.

But the decree must be reversed, for the reason, in disposing of appellant's claim, a less amount has been adjudged to her than the proofs warrant. The proof shows she held two notes, one dated November 14; 1873, for three hundred and fifty dollars, due two years after date, and another for one thousand five hundred dollars, dated June 5, 1874, due three years after date, with interest at the rate of ten per centum per annum. The first note had not been diminished in amount by any payment thereon, save the payment of the interest, the principal remaining the same. Near three years' interest was due on the other note, being about four hundred and fifty dollars. These several sums aggregate twenty-three hundred dollars. The decree is for one thousand nine hundred and sixty-four dollars and twenty-eight cents, only. For this the decree must be reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE SCOTT: I concur in reversing the decree in this case, but not in all the views expressed in the opinion.