HAMILTON-BROWN SHOE COMPANY V. W. F.
LEWIS, TRUSTEE.

No. 390.

1. **Sale Under Attachment—Bona Fide Purchaser.**—Where the defendant in attachment has no record title to land, an attaching creditor who credits the amount of his bid on his judgment at the foreclosure sale is not a bona fide purchaser for a valuable consideration, but takes title subject to outstanding vendor's lien notes, of which he has no notice at the time of levying his attachment, but of which he has notice at the time of the sale under attachment.

2. **Vendor's Lien—Reconveyance of Land.**—A purchaser of vendor's lien notes acquires a lien on the land to secure their payment, and his rights are not affected by any secret agreement, of which he had no knowledge, to reconvey the land.

3. **Same.**—Where a vendor of land takes vendor's lien notes in payment and assigns the notes, and afterwards the land is reconveyed to the vendor, he becomes repossessed of the land, subject to the outstanding vendor's lien in favor of the holder of the notes.

APPEAL from Ellis.    Tried below before Hon. ANSON RAINEY.

*E. P. Anderson,* for appellant, cited:  McElvain v. Allen, 58 Texas, 383;  Smith v. Miller, 63 Texas, 72;  Rev. Stats., art. 4344;  Hawley v. Bullock, 29 Texas, 217;  Grace v. Wade, 45 Texas, 522, 523;  Eylar v. Eylar, 60 Texas, 315.

*M. B. Templeton,* for appellee.—1. While it is true that the deed from Pickett to Reagor, dated December 16, 1889, in which a vendor's lien was retained for the vendor notes, was not recorded at the time of the levy of appellant's attachment against Pickett, in October, 1890, yet appellant is chargeable with notice thereof both by the possession of the vendee (Reagor), and by actual notice before it (appellant) became the purchaser at the sale. Wallace v. Campbell, 54 Texas, 90; 70 Texas, 632.

2. The appellee's title to the land in the foreclosure purchase under the vendor's lien notes executed by Reagor in 1889 is superior to the title of appellant acquired or attempted to be acquired under the attachment levy made October 6, 1889. 54 Texas, 90.

3. The deed from Pickett to Reagor in 1889, for which Reagor executed the vendor's lien notes, can not be considered an escrow, because delivered to the grantee, and the grantee (Reagor) being in possession of the land, appellant is charged with the notice of the character of the title, which was the legal title subject to the payment of the vendor's lien notes. Besides, appellant having actual notice of the vendor's lien notes before he became the purchaser, can not defend against them on the grounds that the deed was not recorded at the time of his levy. 28 S. E. Rep., 279; 70 Texas, 632.

LIGHTFOOT, Chief Justice.—This is an action of trespass to try title brought by appellant to recover 155 acres of land. The judgment of the court below was against it, and it has appealed.

In addition to the facts found in the opinion, the finding of facts by the court below is adopted, as follows:

"1. In 1887, C. D. Pickett, then the owner of the land in controversy, executed a deed of trust on the same, making M. J. Dart trustee. On September 16, 1890, said land was duly sold under said deed of trust, and the same bid off by J. B. Watkins, to whom a deed was made by the trustee, which deed was duly recorded in Ellis County, September 17, 1890.

"2. On December 16, 1889, Pickett deeded said land to D. B. Reagor in consideration of three notes for $500 each, due respectively July, 1890, January 1, 1891, and January, 1892, and the assumption of a mortgage on the land; said deed recorded September 2, 1891; a lien reserved in the deed and notes to secure the purchase money. There was an understanding between Pickett and Reagor, that if Reagor failed to sell certain lands, out of the proceeds of which he expected to pay the notes, the sale was to be rescinded.

"3. In February, 1890, the said notes were transferred to the M. T. Jones Lumber Company to secure a debt due by said Pickett to said lumber company. At the time said debt was contracted (which was prior to the transfer) it was understood between Pickett and W. F.

Lewis, manager of said lumber company, that said notes should be transferred to secure the same.

"4. That at the time of the transfer of said notes none of the M. T. Jones Lumber Company's agents had any knowledge of the condition of sale of said land to Reagor.

"5. On October 6, 1890, plaintiff caused an attachment to issue, which was the same day levied on the land in controversy. A foreclosure of said attachment lien was regularly had, and said land was on the 5th day of May, 1891, regularly sold thereunder, the same bid in by plaintiff, and deed made and duly recorded on May —, 1891.

"6. On March 16, 1891, the M. T. Jones Lumber Company recovered a judgment on the Reagor notes foreclosing vendor's lien; order of sale issued thereunder, and the land was sold to W. F. Lewis, trustee, on June 2, 1891.

"7. At the time of the respective sales under the orders of sale, both parties, plaintiff and said lumber company, had notice of each other's claims to said land.

"8. In September, 1890, Pickett had an understanding with J. B. Watkins, that if Pickett would pay the amount that had accrued on said mortgage, J. B. Watkins would redeed the land to him, Pickett. In pursuance of said agreement, on October 1, 1891, Pickett paid Wyatt & Todd, agents of Watkins, $419.20, the amount agreed upon, which amount was forwarded to Watkins, and by instructions of Pickett the deed was to be made to M. L. Pickett, mother of C. D. Pickett. The deed was returned to Wyatt & Todd, made by Watkins to M. L. Pickett. Before the deed was returned, there was an understanding between Pickett and Lewis that Lewis was to take said land, assume a mortgage for about $1500, and credit Pickett's account with $1000, Picket then owing the lumber company about $1200. In pursuance of this understanding, Wyatt & Todd were instructed to return the deed to Watkins and have him make one to W. F. Lewis, trustee for the lumber company, which was done, said deed being dated in New York, December 22, 1890, and recorded in Ellis County in 1890."

*Opinion.*—1. (1) At the time of appellant's attachment, October 6, 1890, the land had been sold to J. B. Watkins, September 16, 1890, and deed recorded September 17, 1890, and the title vested in Watkins. (2) The land had been sold by Pickett to Reagor December 16, 1889, who had executed notes for the purchase money, and Pickett had transferred them for value to appellee; but Reagor had notified Pickett that he could not take the land in July, 1890. (3) Watkins had agreed with Pickett to let him have the land back at $419.20, subject to the $1500 mortgage; the money had been paid December 1, 1890,

and the deed prepared and signed conveying the land to M. L. Pickett, the mother of C. D. Pickett, but was not delivered.

2. The land was in that condition at the time of appellant's levy of his attachment, October 6, 1890. Upon what did appellant obtain an attachment lien? (1) Upon the equitable title of C. D. Pickett (if any he had) on his repurchase from J. B. Watkins, subject to the $1500 mortgage, and subject to the outstanding equity in the hands of appellee, by reason of the vendor's lien notes given by Reagor to Pickett, and by him transferred to appellee, February, 1890. Russell & Seisfield v. Kirkbride, 62 Texas, 455.

3. The deed from Pickett to Reagor, December 16, 1889, was not recorded until September 2, 1891. Appellant is not shown to have had any notice of it at the time of his levy; but did have notice before the sale. The sale under this deed from Pickett to Reagor was absolute upon its face, but there was a verbal agreement between the parties thereto, that unless Reagor succeeded in making sale of the other property he should not be required to keep the land, but the trade should be cancelled. Appellee had no notice of this secret agreement at the time of its purchase of the Reagor notes, and title to them became fully vested in appellee, carrying a vendor's lien on the land; so that at the time of the levy of appellant's attachment, appellee held, as between it and Pickett and Reagor, a valid vendor's lien on the land. When appellant bought under his order of sale under the attachment proceeding, it is not shown that he paid out any money, but he credited the amount of his bid on the judgment, and bought subject to the vendor's lien of appellee. Bailey v. Tindall, 59 Texas, 540; McKamey v. Thorp, 61 Texas, 651.

4. At the time of the sale and deed to appellant under its foreclosure proceedings, May 6, 1891, appellant had notice of the rights of appellee under said vendor's lien notes; in fact, suit had been brought by appellee to foreclose said lien, February 9, 1891, and judgment had been rendered foreclosing the lien, March 6, 1891, and order of sale issued May 5, 1891, under which sheriff's deed was subsequently made to appellee, June 2, 1891. (2) Subsequent to appellant's attachment, but prior to its sale and purchase thereunder, viz., on December 22, 1890, by an arrangement between Pickett, Watkins, and appellee, before the delivery of the deed which had been agreed upon from Watkins to Mrs. Pickett, it was agreed that Pickett should pay to Watkins the $419.20 which had already been deposited with Watkins' attorney, October 1, 1890, that appellee should give Pickett credit on his account for $1000, and that Watkins should deed the land to appellee. This transaction amounted simply to a purchase by appellee of the land from C. D. Pickett, who held a supposed equity, by which arrangement appellee secured the legal title from J. B. Watkins, paying therefor $1000, which was credited on Pickett's account. At the time

of this purchase appellee was charged with legal notice of the attachment of appellant.

5. But the deed from Pickett to Reagor and the notes executed by the latter to the former, and by him transferred to appellee, fixed in appellee a valid vendor's lien upon the land—an equity which was perfectly good between the parties before the attachment was levied. It is true, that at the time of the levy of the writ of attachment appellant had no notice of this equitable right of appellee, and it is contended by appellant's counsel that, having fixed a valid and legal attachment lien upon the property without any notice of appellee's equity, it thereby secured the better right, even though it had notice of such equity before the sale. Can this contention be maintained? When appellee in good faith acquired the vendor's lien notes upon the land from Pickett, and he (Pickett) subsequently cancelled his trade with Reagor, he became repossessed of the land, subject to such vendor's lien in the hands of appellee.

At the time of the attachment, appellant fixed his attachment lien upon all the interest owned by Pickett at that time, which was an equity, if anything; the appellee then held a vendor's lien, and the legal title was outstanding in J. B. Watkins, and was subsequently acquired by appellee. The appellee acquired his title (1) under foreclosure of his vendor's lien and purchase under it, and (2) by the arrangement whereby he secured the legal title from J. B. Watkins. The appellant acquired the title claimed by him under foreclosure of his attachment and purchase under it.

We find that appellee secured the better title. When appellant bought under his foreclosure proceedings, he had actual notice of appellee's rights; he paid out no money on his bid, and can not be said to be an innocent bona fide purchaser, and acquired no rights superior to those held by appellee. Ilse v. Seinsheimer, 76 Texas, 459; Parker v. Coop, 60 Texas, 111.

If at the time of the levy of appellant's attachment the record title to the property had been vested in Pickett, the defendant in attachment, and a valid legal attachment lien had been fixed upon the property in his hands, the appellant might have maintained an impregnable position under the registration statutes, and could have invoked the authority of McKamey v. Thorp, supra, where Judge Willie said: "It is the well settled law of this court that an execution lien will hold good as against an unrecorded conveyance previously made to a third party by the judgment creditor. Ayres v. Duprey, 27 Texas, 594; Grace v. Wade, 45 Texas, 522; Borden v. McRae, 46 Texas, 396; Parker v. Coop, 60 Texas, 111; Grimes v. Hobson, 46 Texas, 416. Hence, where such a lien has been secured without notice, the purchaser at the sale made under the execution is protected in his title, whether he

have knowledge of the unrecorded instrument at the time of his purchase or not.    This is by force of the registration laws."

In the case of Senter & Co. v. Lambeth, 59 Texas, 263, the court, after reviewing the line of decisions referred to in the above case, says: "These decisions only apply to cases where the third party to be affected by the unrecorded conveyance acquired thereby the legal title."

But in this case, at the time of the levy of the attachment the defendant in attachment had no record title to the property.    The legal title was vested in J. B. Watkins, and his deed was duly recorded, and there was a prior equity in appellee by virtue of its vendor's lien.    It is true that Pickett had contracted with J. B. Watkins for the repurchase of the property, and had paid to Watkins' agents the purchase price; but no deed had been made, and it is doubtful whether such equities are shown in his favor as would have authorized him to obtain specific performance of the contract.    In any event, if the attachment lien became fixed upon anything, it was nothing more than an equity which would carry with it such rights as Pickett held at the time, and nothing more.    What were Pickett's equities?  Simply the right to repurchase the land, which was subject to the vendor's lien of appellee in his hands.

Appellant at best having bought only an equity, the record title being in Watkins at the time of the levy, and in appellee at the time of the sale, and at the time of appellant's purchase he having full notice of appellee's superior equity, which had been merged into his legal title acquired from Watkins, the sale under the attachment conveyed no title.    Hamblen v. Folts, 70 Texas, 133; McCamly v. Waterhouse, 80 Texas, 340.    This is strictly an action of trespass to try title, and there is no pleading directed towards the ascertainment of equities growing out of the transaction further than may be necessary to fix the title, and we are not called upon in the present attitude of the case to go further than to decide the question of title.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered May 31, 1894.


Writ of error refused by Supreme Court, October 18, 1894.