**JENNINGS *v.* LENTZ.**

93 Pac. 327.

ATTACHMENT—ATTACHING CREDITOR—BONA FIDE PURCHASER.

1. Section 302, B. & C. Comp., provides that from the date of an attachment until it is discharged, or the writ is executed, plaintiff, as againt third persons, shall be deemed a purchaser in good faith and for a valuable consideration, provided the sheriff's certificate required by section 301 is filed as required by section 303. *Held,* that an attaching creditor, in order to obtain the rights of a *bona fide* purchaser, is bound to prove that he in fact acquired his lien in good faith and without notice of outstanding equities.

ORDINARY PRUDENCE IN MAKING PURCHASES—"GOOD FAITH."

2. Good faith is an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all belief of facts which would render the transaction unconscientious. A want of that caution and diligence which an honest man of ordinary prudence is accustomed to exercise in making purchases is, in judgment of law, a want of good faith.

VENDOR AND PURCHASER—NOTICE.

3. Whatever is sufficient to put a subsequent purchaser on inquiry must be considered legal notice to him of the facts inquiry would have disclosed by the exercise of reasonable diligence.

ATTACHMENT—ATTACHING CREDITORS—NOTICE—RECORDS.

4. Sections 300-303, 5359, B. & C. Comp., provide that nonexempt real estate shall be liable to attachment by the sheriff making a certificate and filing the same with the clerk of the county in which the property is situated, and that from the date thereof the plaintiff, as against third persons, shall be a purchaser in good faith, and that every conveyance of real property within the State which shall not be recorded within five days after its execution shall be void as against a subsequent *bona fide* purchaser whose conveyance shall be first recorded. L. having sold certain land to D. for a consideration, half of which was secured by a mortgage thereon, D. within an hour conveyed the property to G., who conveyed it to complainants' grantors. The mortgage to L. was recorded, but the deed to D. was not, and defendant, relying on a statement by L. that he had conveyed the land to D., attached it for D.'s debt, after which the deeds to D. and complainants were recorded. *Held*, that L.'s statement that he had conveyed the land to D. was rebutted by the record which showed that the title still remained in L., which record only gave notice of the facts therein stated and warned defendant to make further inquiries as to D.'s title to the premises, so that he was not a *bona fide* purchaser under his attachment, entitled to priority against complainants.

From Baker: WILLIAM SMITH, Judge.

Suit to remove a cloud upon the title to 160 acres of land in Baker County. The defendant appeals from a decree in favor of plaintiff.	AFFIRMED.

MR. JUSTICE EAKIN and MR. COMMISSIONER SLATER dissenting.

For appellant there was a brief over the name of *Mr. Charles A. Johns,* with an oral argument by *Mr. Woodson L. Patterson.*

For respondent there was a brief over the names of *C. E. Norton* and *C. P. Murphy,* with an oral argument by *Mr. Murphy.*

Opinion by MR. COMMISSIONER KING.

This is a suit to remove a cloud upon the title to 160 acres of land in Baker County, and is brought here on an appeal from a decree of the circuit court in favor of plaintiffs. On and prior

to April 23, 1902, the land was owned and in the actual possession of Frank Lentz. On the date named, in consideration of $500, one half of which was paid in cash and the balance by a note due one year after date, secured by a mortgage on the property, he executed a warranty deed to the premises to Robert Duvall, who, within an hour after receipt of the conveyance, and without entering into possession, executed a like deed therefor to Mary E. Gardner, who had furnished the money for the purchase, and for whom, without the grantor's knowledge, Duvall was acting as agent in the purchase from Lentz. On the same day that the deed to Duvall was executed, Lentz recorded his mortgage in the proper records of that county, and soon thereafter removed from the land, leaving no one in possession, and, so far as manifested by the evidence, no one was in actual possession of the land when this suit was filed. The deed to Gardner was given subject to the Lentz mortgage, which, with the deed from Lentz to Duvall was left by Mrs. Gardner with M. S. Hughes, who was to take them to the clerk's office for record; but for some unexplained reason they were not recorded until 30 days later. On October 3, 1903, Mrs. Gardner, by warranty deed and for a valuable consideration, transferred the property to plaintiffs' grantors, who, by like deed, conveyed it to plaintiffs. Shortly after Frank Lentz had deeded the property to Duvall he informed the defendant of the transfer, to whom it appears Duvall was indebted in the sum of $145, which indebtedness was incurred some time prior to the transfer of the property by Lentz. Defendant then had his attorneys examine the records of the county for the purpose of ascertaining if the debtor still owned the property, which resulted in their finding a record of the mortgage on the property from him to Frank Lentz, but the record title to the land in the mortgagee. Without further information than the statement by Frank Lentz to the effect that on April 23d he had conveyed the land to Duvall, and the record of the mortgage named, the defendant, on May 7, 1902, caused the land to be attached in an action filed against Duvall on the $145 claim, in which proceeding judgment was obtained, execution issued thereon,

and the property sold to satisfy the judgment, which property was purchased by defendant, he receiving a sheriff's deed therefor, through which he here claims title.

There is no controversy as to the facts, leaving for adjudication the question as to which has the better title under the facts as stated.

1. Our statute provides that any real property of the debtor not exempt from execution shall be liable to attachment, which shall be attached by the sheriff making a certificate containing the title of the cause, names of the parties and description of the realty, with a statement showing the property to have been attached, and filing the same with the clerk of the county in which the property is situated; that from the date thereof until discharged, or writ executed, the plaintiff, as against third persons, shall be deemed a purchaser in good faith for a valuable consideration; that his rights as such shall attach immediately upon the filing of such certificate; and that every conveyance of real property within this State which shall not be recorded within five days after the execution thereof shall be void as against any subsequent purchaser in good faith for a valuable consideration, whose conveyance thereof shall be first duly recorded: B. & C. Comp. §§ 300-303, 5359.

2. In order, therefore, to determine whether defendant's title is superior to that of plaintiffs, it is necessary to ascertain only whether, in lieu of the course pursued, he would have been a purchaser in good faith, if with the limited knowledge of the status of Duvall's title at the time of the levy, defendant had purchased the property from him and paid a valuable consideration therefor. If answered in the affirmative, he has the better title and must prevail; otherwise plaintiffs have the superior title, and are entitled to the relief demanded. Under the law as it existed prior to the adoption of the statute mentioned, to the effect that after the filing of the attachment proceedings the creditor shall be deemed a purchaser in good faith, the creditor, by virtue of his attachment, acquired a lien only on the actual interest which the debtor had in the property: *Riddle* v. *Miller,* 19 Or. 468 (23 Pac. 807). It is obvious that

the statute on this point was intended to modify this rule, and to give the attaching creditor, regardless of the actual condition of the debtor's title, additional protection by placing him in the same position as a *bona fide* purchaser for value, in case of failure on the part of the real owner to observe the requirements of the recording acts. But, in construing these acts, it has been repeatedly held, and has become a settled rule in this State, that an attaching creditor, although placed on an equality with a purchaser by this statute, cannot insist on any greater protection than would be granted to such purchaser; and, in suits in equity, the claim of a *bona fide* purchaser for value is an affirmative defense, which must be pleaded, thereby placing the burden of proof in such cases upon the party relying thereon: *Weber* v. *Rothchild*, 15 Or. 385 (15 Pac. 650: 3 Am. St. Rep. 162) ; *Wood* v. *Rayburn*, 18 Or. 3 (22 Pac. 521) ; *Rhodes* v. *McGarry*, 19 Or. 222 (23 Pac. 971) ; *Marks* v. *Miller*, 21 Or. 317 (28 Pac. 14: 14 L. R. A. 190) ; *Simpkins* v. *Windsor*, 21 Or. 382 (28 Pac. 72) ; *Dimmick* v. *Rosenfeld*, 34 Or. 101 (55 Pac. 100) ; *Flegel* v. *Koss*, 47 Or. 366 (83 Pac. 847) ; *Haines* v. *Connell*, 48 Or. 469 (87 Pac. 265, 88 Pac. 872). In discussing this feature, Mr. Chief Justice THAYER, in *Rhodes* v. *McGarry*, 19 Or. 222 (23 Pac. 971), observes:

"It seems to me that, notwithstanding the language of the code above set out, an attaching creditor, in order to be deemed a purchaser in good faith of the property as against one having an outstanding equity, must allege and prove all the facts necessary to establish that character of ownership in favor of a purchaser of such property as against such an equity. It can hardly be supposed that the legislature intended, by the provision of the code referred to, to place an attaching creditor upon any more favorable grounds, with reference to his rights in the property attached, than those occupied by a purchaser of the property; nor to deem the former a purchaser in good faith, except under the same circumstances in which the latter would be deemed such a purchaser. Any other view would lead to absurd consequences and occasion injustice. It would enable a party to cut off an outstanding equity by resorting to an attachment when he would not be able to accomplish it by a direct purchase of the property. Such a result was obviously

not contemplated by the adoption of the said provision of the code."

As the answer is sufficient to bring the defendant's position within the rule announced, it becomes necessary to determine whether this plea is sufficiently supported by the evidence to entitle defendant to be deemed a purchaser in good faith. Words & Phrases (vol. 4, p. 3117) defines "good faith" as being "an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." And the rule is that "a want of that caution and diligence which an honest man of ordinary prudence is accustomed to exercise in making purchases is, in judgment of law, a want of good faith": Words & Phrases, vol. 4, p. 3117.

3. Whatever is sufficient to put a subsequent purchaser on inquiry must be considered legal notice to him of those rights, and when the purchaser omits to observe that ordinary precaution, he must be charged with a knowledge of all facts he might have' learned by the exercise of reasonable diligence in making inquiry as to matters to which his attention had been directed: Dembitz, Land Titles, §§ 132, 133; *Bent* v. *Coleman,* 89 Ill. 364; *Citizens' Nat. Bank* v. *Dayton,* 116 Ill. 257 (4 N. E. 492); *Pringle* v. *Phillips,* 5 Sandf. (N. Y. Sup. Ct.), 165.

The precise question, as here presented, is before this court for the first time, and we are referred to no case in which the point under a similar state of facts as here disclosed has been distinctly passed upon, nor have we found one, but an application of the principles stated are decisive of the issues presented. The result hinges upon the sufficiency of the inquiry made in reference to the debtor's rights in the premises. In this connection it is urged that the mortgage from the debtor to his grantor, being of record, when considered with the grantor's statement to the creditor to the effect that he had conveyed the property to the debtor on a prior date, without further inquiry, constituted sufficient evidence of the debtor's ownership therein to justify the attachment. It will be remembered, however, that

the record at the same time disclosed the title to the property to be in Frank Lentz. When, therefore, it is made to appear from the record that the title is in a person other than the debtor, the record of a mortgage on the land, given by such debtor, is not notice, or satisfactory evidence, that he is the owner of the premises mortgaged. A public record does not give notice of any facts not stated in it, or of facts that a person would not expect in the ordinary course of business to be found there. A person in the ordinary course of business affairs would not have expected to find a mortgage of record given by Duvall, unless he also appeared by the records to be the owner of the property mortgaged. From this it follows that, when the record disclosed the title to be in Lentz, the record of a mortgage given to him by Duvall did not constitute notice or evidence that the latter was the owner of the mort-gaged premises: Webb, Record Title, §§ 158, 160; *Security Trust Co.* v. *Lowenberg,* 38 Or. 159 (62 Pac. 647) ; *Roberts* v. *Bourne,* 23 Me. 165 (39 Am. Dec. 614) ; *Pierce* v. *Odlin,* 27 Me. 341; *Losey* v. *Simpson,* 11 N. J. Eq. 246; *Bingham* v. *Kirkland,* 34 N. J. Eq. 229; *Calder* v. *Chapman,* 52 Pa. St. 359 (91 Am. Dec. 163) ; *Doswell* v. *Buchanan,* 3 Leigh, 365 (23 Am. Dec. 280).

4. The statement by Frank Lentz that he had conveyed the land to Duvall was rebutted by the record itself showing the title still to be in the person making the statement. The record of the mortgage was not only inadequate for the purpose claimed, but even if considered in connection with defendant's inquiry from Duvall's grantor, it cannot be held sufficient, in the absence of further investigation, to impart such notice as "an honest man of ordinary prudence is accustomed to act upon," when making a purchase of real property; and if not such as would be deemed sufficient for an actual purchaser, it must be conceded under the adjudications of this State, that it is in-sufficient to protect the defendant as an attaching creditor. As stated in *Bent* v. *Coleman,* 89 Ill. 364, 368:

"A person about to purchase this tract of land would nat-urally inquire into the title of the vendor. He would ascertain

his source of title. This is the ordinary, and usually the first, inquiry."

It appears that Duvall was known to be in the vicinity of the land when the attachment was made, and had defendant intended to purchase the land outright, it would have been his duty to ascertain, and he would probably have endeavored to learn, whether he had any title to convey. Had this been done, it is presumed he would have been told the truth, resulting in no purchase having been made; and, if made, defendant, under such circumstances, would have taken nothing under his deed as against Duvall's successors in interest. He could not, under such circumstances, have been a purchaser in good faith; and, as stated, he can be in no better position as an attaching creditor. When defendant was informed of the sale to Duvall, and that he became the owner, it had reference only to his ownership on April 23d, which was prior to the attachment, and it did not necessarily follow that the title was in him at the time of the levy; nor does it appear that defendant was in any manner informed that his debtor either was, or claimed to be, the owner at that time, and, finding the record evidence of title in the debtor's supposed grantor, this was sufficient to put him on inquiry, and made it imperative that he should make further investigation before acting, or else assume the risk of Duvall having no title. "It was not incumbent on him to exhaust every possible source of information" (*Johnson* v. *Erlandson,* 14 N. D. 518: 105 N. W. 722), but it was his duty to use at least reasonable diligence in that respect, or, in the event of his failure to do so, to abide the consequences. When he examined the records, and, in place of finding the title in the debtor, found it in a third party, he was in a far different position than that of a person attaching property on a claim against one who, under the records, holds the apparent title; for Duvall, when the levy was made, had neither the apparent nor the actual title. In the case of *Davis* v. *Lutkiewiez,* 72 Iowa, 254 (33 N. W. 670), to which our attention is directed, the grantor had the deed in his possession, which the court held was better evidence of title than a record thereof, as the record would have

imparted no notice not disclosed by the original deed, and when the person holding and exhibiting such instrument represented himself to be the owner of the property, the purchaser had such evidence of title as to justify him in acting accordingly. In this respect the case mentioned is very different from the one under consideration, in which the debtor had neither the actual title, nor any evidence thereof; nor does it appear that he claimed to be the owner of the land, nor that, after discovering the status of the title of record, any effort was made to ascertain from any one likely to be in possession of the desired information, whether at the time of the levy the debtor either was, in fact, or claimed to be, such owner.

After a careful consideration of the facts disclosed by the record, and of what we deem the principles of law applicable thereto, as announced and recognized by previous decisions of this court, we are impelled to hold that plaintiffs have the better title, on the ground that, when the records of the clerk's office of the county in which the land may be situated fail to show any title in the debtor, but disclose it to be in another, and the title in fact is not in such debtor, and the extrinsic evidence at hand is insufficient to warrant the creditor in acting on the theory of the debtor being the owner thereof, such attaching creditor must abide the risk incurred by his levy, and take only "what accident throws into his net as he finds it, and he cannot claim the benefit of a fiction to get more than his debtor really owned": *Cowley* v. *McLaughlin,* 141 Mass. 181, 182 (4 N. E. 821). See, also, *Haynes* v. *Jones,* 5 Metc. (Mass.), 292; *Hamilton-Brown Shoe Co.* v. *Lewis,* 7 Tex. Civ. App. 509 (28 S. W. 101).

The decree of the court below should accordingly be affirmed.

AFFIRMED.

MR. JUSTICE EAKIN delivered the dissenting opinion.

I am unable to concur in the foregoing opinion. The real point upon which the decision turns, is that the purchaser from a grantee whose deed is not recorded is, by reason of that fact alone, put upon inquiry, and consequently charged with notice

of the prior unrecorded conveyance from such grantee, and I refer to the rights of the attaching creditor as those of a *bona fide* purchaser for value without notice, as that is what the statute says he shall be deemed. It is conceded that if the grantee's deed is on record, a purchaser from him is not put upon inquiry or notice of a prior unrecorded deed. He takes a good title, if in fact ignorant of it. There are many cases where there can be no record of one's title, such as title by descent or by adverse possession, but that fact cannot prejudice one's right to purchase or attach. I dare say that it is an everyday occcrrence that purchases are made from grantees who have not yet had their deeds recorded. In such a case the purchaser is bound to search the record for a conveyance from the apparent owner, as disclosed by the record, as well as from his own vendor, but the fact that his vendor's deed is not recorded cannot put him upon any other inquiry, or charge him with notice of any other facts. Section 5359, B. & C. Comp., provides that:

"Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this title, within five days thereafter, shall be void against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance shall be first duly recorded."

From this it seems clear that the recording statute has no reference to the title acquired by the purchaser from one whose deed is not recorded, but affects the title only of him who fails to record his deed until a prior deed from his grantor, of which he had no notice, is recorded. The statute contains no suggestion or imputation that one can purchase only from him who appears, from the record, to be the owner, or if he does so, it is at his peril. The effect of the opinion in the case is that, if one purchases from a person who is not disclosed by the record to be the owner, he gets only such title as his grantor actually has at the time of the purchase, regardless of the provisions of the recording statute. This is the holding in *Flynt* v. *Arnold,* 2 Metc. (Mass.), 619. The effect of our statute (B. & C. Comp.

§§ 302, 5359), is that the attachment can reach the actual interest had in the property by the debtor at the time of the attachment, and as to this remedy the registration laws have no application whatever, and the attachment can reach only such interest, except that in case of a prior conveyance by the debtor such conveyance will be deemed void if it is unrecorded and the creditor is without notice of its existence, and in that case the attachment will be effectual as though said deed had not been made, and the recording statute, by its terms or intendment, applies only to such unrecorded instrument. In the case of *Davis* v. *Lutkiewiez,* 72 Iowa, 254 (33 N. W. 670), it is said:

"An unrecorded deed is valid as to the whole world, except a subsequent purchaser for a valuable consideration without notice. Surely the deed itself is better evidence of title in the grantee than the record of the deed. This deed the mortgagor had and held when Davis & Sons took their mortgage. A record of it would have imparted no notice not imparted by the original instrument."

The court, further speaking of the case of *Flynt* v. *Arnold,* 2 Metc. (Mass.), 619, which holds that "one who purchases land from a person holding an unrecorded deed purchases at his peril," says:

"But this proposition cannot be sustained, because, under our registry laws, the holder of an unrecorded deed has a complete title except as against a subsequent good-faith purchaser without notice."

*Johnson* v. *Erlandson,* 14 N. D. 518 (105 N. W. 722), was a case where Hogenson, the original owner, conveyed to Erlandson, which conveyance was never recorded. Erlandson executed a deed to Baker, but it was never delivered, and was fraudulently put on record by Baker, and plaintiff claims through Baker. The question was whether the fact that the deed to Erlandson was unrecorded put plaintiff on inquiry or charged her with notice of Erlandson's rights. The court say, in substance:

"It is urged that the failure to record the deed from Hogenson to Erlandson was sufficient to put plaintiff upon inquiry and charge her with notice of the facts which inquiry of Erlandson would have disclosed."

The court further say:

"We cannot agree with this argument. The fact that the record failed to show that Hogenson had ever parted with his title was constructive notice of Hogenson's rights and nothing more. The only subject of inquiry suggested by that fact was the question as to whether or not Erlandson had unconditionally acquired Hogenson's title. It is admitted that such is the fact."

The Massachusetts cases hold that the attaching creditor is not protected in his levy unless the attachment debtor had at the time of the levy a record title, on the theory that that is his means of information (*Cowley* v. *McLaughlin*, 141 Mass. 181 (4 N. E. 821); *Haynes* v. *Jones*, 5 Metc., Mass., 292; but in the former case the court suggest that if he knew at the time of the attachment that the title had passed to the attaching debtor it might be sufficient. In *Davis* v. *Lutkiewiez*, 72 Iowa, 254 (33 N. W. 670), it may be inferred that the mortgagees had knowledge of the conveyance to their mortgagor, and in *Johnson* v. *Erlandson*, 14 N. D. 518 (105 N. W. 722), the plaintiff, in taking her title under an unrecorded deed, had the same character of information of its execution as the attaching creditor had in this case, viz., the statement of the grantor in the unrecorded deed. In this case the attaching creditor had information from Lentz, Duvall's grantor, that a conveyance had been made to Duvall; and I am convinced that in such a case a purchaser for value without notice is not, by reason of the absence of the vendor's title from the record, put upon inquiry or charged with notice that the grantee in the unrecorded deed had previously conveyed the property.

MR. COMMISSIONER SLATER concurs in this dissenting opinion.