[Filed April 16, 1889.]

GEARY ET AL., APPELLANTS, v. PORTER, RESPONDENT.

DEED INTENDED AS A MORTGAGE. — A party who takes a mortgage in the form of an absolute deed is bound to observe the most scrupulous good faith; and if questioned by a creditor of the mortgagor, or other person having an interest in knowing the fact, he must carefully and truly disclose the true nature of his security. An untruthful statement touching a material fact in relation to such security, or a failure to make a full and true disclosure when required, will postpone such security to that of a subsequent attaching creditor.

ID. — A deed intended as a mortgage, while good between the parties, is to some extent a questionable security when the interests of third parties are concerned. It tends to cover up and keep concealed the real nature of the transaction between the parties, and will therefore be closely scrutinized.

APPEAL from Linn County.

*Wolverton & Irvine,* for Appellants.

*J. K. Weatherford,* for Respondent.

STRAHAN, J.—This is a suit to foreclose a mortgage given in the form of an absolute deed. A copy of the instrument is attached to the complaint. It is for the consideration of one dollar, and purports to convey to the plaintiff, with covenants of general warranty, a fee-simple title to the granted premises. It was executed on the twenty-ninth day of December, 1886, and recorded the same day in the record of deeds of Linn County.

The complaint avers, amongst other things, that at the time of the execution of this instrument, Nancy J. Sippy was indebted to the firm of Smith and Geary in the sum of $188.25, and at the same time she was also indebted to Koontz and Lame in the sum of $139.02, and that in consideration that the plaintiff would assume the payment of the two claims, she executed and delivered to him the said conveyance. It is then stated that said conveyance

XVII. OR.—30

was intended as a mortgage, and a parol defeasance is alleged. The respondent, Martha A. Potter, is joined as defendant, because it is alleged she has or claims some interest in the premises by way of judgment lien, but that whatever her interest, the same is subsequent and subject to the plaintiff's lien.

The indebtedness set out in the complaint is denied by the answer, or that the plaintiff assumed the same. The answer alleges, for a further and separate defense, that on the fourteenth day of May, 1887, one T. J. Black commenced an action in the circuit court of Linn County to recover of Sippy the sum of $150.62, and caused a writ of attachment to be duly issued in said action, and the premises in controversy to be attached; that on the fifteenth day of March, 1888, judgment in said action was duly rendered and given for the sum of $64.66, with costs and disbursements taxed at $65.50; that thereafter said Black duly assigned said judgment to the defendant Porter, who caused an execution to issue on said judgment, and the attached premises to be sold by virtue of said execution, on the twelfth day of May, 1888, and that at such sale she became the purchaser thereof. It is then alleged that at and during all of said times Sippy was insolvent, and that after she became indebted to Black she conveyed the land in controversy to the plaintiff, with the intent to hinder, delay, and defraud said Black and other creditors, and that the plaintiff had notice of such fraudulent intent at the time, and that he paid nothing for said property, and that this defendant has been thereby hindered and delayed, etc.

It is then alleged that the plaintiff has been in the possession of said premises since the 29th of December, 1886, receiving the rents and profits thereof to the amount of $180, which it is alleged ought to be credited on any lawful claim he may appear to have.

A reply put the new matter in the answer at issue, except the claim of Black, the institution of the action by him against Sippy, the attachment of the premises in controversy, the assignment of the judgment to Porter, and the sale and purchase thereof by her.

The cause was then referred, and the evidence taken in writing, and upon a final hearing in the court below said court found for the defendant on the issue presented by her, and dismissed the suit, from which the plaintiff has appealed.

1. The evidence tends to show that Sippy was indebted to Smith and Geary and to Koontz and Lame in the amounts alleged at the time of the execution of the deed; that Geary has never paid anything whatever for said land, or on account thereof. He says expressly that the agreement was, that the claims should be paid out of the proceeds of the sale of the place when it should be sold, and the residue was to be paid to Mrs. Sippy. Under this state of facts, Geary incurred no liability to Koontz and Lame, or to his copartner Smith, unless they should see proper to charge the property in his hands, as being held in trust for them. In that event, the property would be reached, and Geary would not be subjected to any individual liability, unless he abused his trust. The evidence tends further to prove that Geary went into the possession of the premises about the date of the deed, and exercised all the authority of owner receiving the rents. These he quietly paid over to Mrs. Sippy, which he says she was to have under the arrangement with her. The evidence also tends to prove that Mrs. Sippy was disputing Black's claim; said it had been paid, and that she did not propose to pay it again. This she told Dr. Smith at the time she was arranging the terms of the conveyance to Dr. Geary. Dr. Smith is of the firm of Smith and Geary, and conducted all of the negotiations in respect to this conveyance. He

arranged the terms and conditions, and reported them to his partner, who acquiesced. It also appears that Mrs. Sippy disputed Black's claim, and told him she never in-tended to pay it unless compelled to. It further appears from the evidence that when Black inquired of Dr. Smith and Dr. Geary concerning the Sippy property, each of them told him, at different times, that their claim against Sippy was about two hundred dollars, and that they had paid her in money five hundred dollars more, making the purchase price of the property seven hundred dollars, and that Dr. Geary said the property belonged to him. Dr. Geary also told the defendant Porter that the property had cost him in the neighborhood of $700, but he would let her have it for $650, and if she did not want it at that she could go ahead. This was after Mrs. Porter had ac-quired the Black claim. Dr. Geary also informed W. J. Stewart, who was the administrator of the partnership estate of Black, Porter, & Co., when asked about it, that he had bought the Widow Sippy's property. Dr. Smith also told Joseph Pearl "that Black need not trouble him-self, for we have bought the property, and have a deed for it."

There is much more evidence of the same sort, but its recapitulation is not deemed necessary.

After a very careful consideration of all of the evidence, I am unable to find that the plaintiff is entitled to that priority which he claims. Mrs. Sippy, by this deed to Dr. Geary, was undoubtedly attempting to hinder and delay Black in the recovery of his debt. If Drs. Smith and Geary did not have actual knowledge of Mrs. Sippy's intent, they knew enough of the facts and circumstances to have put them on their guard,—to have made them cautious, to have required them to proceed with care and deliberation; but if they had taken a mortgage to secure their own debt, or even their own debt with Koontz and

Lame, and then allowed the true nature of the transaction to have been public, their claim would not have been postponed to that of the defendant.

But here the form of security which they selected, while good between the parties, was questionable where the interests of third parties are concerned. It was one which upon its face did not disclose the true nature of the transaction. It was therefore calculated to deceive and mislead. In addition to this, when Drs. Smith and Geary were questioned as to the true nature of the transaction, they did not make that certain and direct and straightforward disclosure which the defendant's assignor and the defendant herself had a right to require. Their statements, whether designed to be so or not, were misleading. The effect of their course upon the rights of the defendant was just as disastrous as though the most flagrant fraud had been actually intended. Still, under the circumstances, I do not feel inclined to visit them with all of the consequences of actual fraud; in their anxiety to secure their own debt, and to favor Koontz and Lame, they may not have fully weighed and considered the effect of their acts and words on the rights of other parties. However that may be, I think they made such fraudulent use of their deed as postpones it as a lien to the claim of the defendant Porter. The property in controversy will therefore be decreed to be sold, and Mrs. Porter will first be paid the amount of the judgment referred to, with all costs and disbursements therein, including the costs and disbursements on the execution, with interest on all of said sums from the dates they ought properly to draw interest, and the residue, if any, will be paid over to the plaintiff. The attitude of the plaintiff in this litigation entitles the respondent to her costs in this court. In this case we have not considered, and do not decide, anything as to the effect of recording a mortgage in the record of deeds,

which is made in the form of an absolute deed, nor whether the amount of the actual consideration can be shown against a subsequent attaching creditor, where there is nothing in the record to disclose what the real consideration was. These questions were not discussed, and they are too important to be passed upon without a careful examination at the bar. And in this particular case the conclusion we have reached seems to render their decision unnecessary.