## SECURITY TRUST COMPANY *v.* LOEWENBERG.

[62 Pac. 647.]

Deed as a Mortgage — Attachment Against Grantor.

1. A deed made to secure an indebtedness does not convey the legal title to the grantee, and the actual interest and right of the grantor is subject to attachment by his creditors after the delivering and recording of such an instrument.

Attaching Creditor as Bona Fide Purchaser.

2. Under Hill's Ann. Laws, § 150, providing "that from the date of an attachment until it is discharged or the writ executed, the plaintiff as against third persons shall be deemed a purchaser in good faith and for a valuable consideration of the property attached," an attaching creditor is entitled, by reason of his attachment, to the same rights as a purchaser from the debtor, and is chargeable with only such notice as the record imports: *Osgood* v. *Osgood*, 35 Or. 1, cited.

Deed Intended as a Mortgage — Effect of as Notice.

3. One dealing with real estate as the property of a person not holding the record title is chargeable with notice of all the rights of the holder of the title, and is bound to make inquiry concerning such rights; thus, a creditor who attached property that had been previously mort-

gaged to another creditor by a deed absolute in form is chargeable with notice not only of the debt secured by the original transfer, but also with notice of any subsequent pledges of the same property to the same creditor either for himself or in trust for others.

Wolverton, J., dissents.

From Multnomah: John B. Cleland, Judge.

Suit by the Security Savings & Trust Company and others against Bertha Loewenberg, executrix, and others to foreclose a trust deed given as security for the payment of money. The facts, which are undisputed, are that on June 19, 1893, the defendant Loewenberg and wife conveyed to the plaintiff, as trustee, by a deed absolute in form, certain real property, to secure the payment of $100,000 to be loaned to him by certain banks of Portland, and contemporareously therewith, as a part of the same transaction, received from the trust company a written defeasance, which, after setting out the fact of the conveyance, recites that: "Whereas, said real property so conveyed to the said Security Savings & Trust Company, trustee, was conveyed for the purpose of securing said Security Savings & Trust Company, trustee, for moneys to be advanced from time to time, not exceeding one hundred thousand dollars, to the said Julius Loewenberg, which sums of money are to be repaid to it on demand, with interest at eight per cent. per annum, together with any taxes or other charges that said Security Savings & Trust Company may be required to pay on said moneys so loaned or upon said real property; and which sums of money, not exceeding the said sum of $100,000, are to be advanced and loaned to the said Julius Loewenberg at the request and for the accommodation of the said Julius Loewenberg and Bertha Loewenberg, and to secure the same the said Julius Loewenberg and Bertha Loewenberg have executed the conveyance aforesaid: Now, this instrument certifies and de-

clares that whenever the sums of money that may from time to time be advanced by the said Security Savings & Trust Company, trustee, to the said Julius Loewenberg as aforesaid, shall be repaid to the said Security Savings & Trust Company, trustee, with interest at eight per cent. per annum, together with any taxes or other charges that it may be required to pay on account of said loan, then the said Security Savings & Trust Company will reconvey to the said Julius Loewenberg and Bertha Loewenberg, in such manner as they shall direct, the whole of the real property hereinabove described." The deed was recorded on the twenty-seventh day of July, 1893, in the record of deeds, but the defeasance was not placed of record. The associated banks thereupon advanced money to Loewenberg from time to time, through the plaintiff corporation, aggregating in amount $100,000, the larger portion of which had been repaid prior to the commencement of this suit.

On January 5, 1895, Loewenberg was indebted to the First National Bank of Portland in the sum of $23,000, and to the London & San Francisco Bank, Ld., in the sum of $10,000, but, fearing the effect upon his other creditors, refused to secure the same by a formal mortgage upon the property described in the deed to the plaintiff corporation. After much importunity, however, with the understanding that it should not be placed of record, he executed and delivered to these banks a written instrument, of which the following is a copy:

"To the Security Savings & Trust Company, Portland, Or.:

"The undersigned, J. Loewenberg, of Portland, Oregon, being at this day justly indebted to the First National Bank of Portland, Oregon, in the sum of twenty-three thousand dollars ($23,000), and to the London & San Francisco Bank, Ld., in the sum of ten thousand dollars ($10,000), which sums he has agreed to secure by mortgaging and pledging the hereinafter described property heretofore conveyed to
    38 OR.—11.

you by the said J. Loewenberg and wife, and which you hold the title to as security for the sum of $75,000 now remaining due, therefore the undersigned, J. Loewenberg, does hereby grant and convey to the said First National Bank of Portland and London & San Francisco Bank, Ld., as security, and as a mortgage to secure the said sums so due said two banks, the following portion of the real property heretofore conveyed to you by J. Loewenberg and wife on June 19, 1893, subject to the liens and claim for which you now hold the same, to wit: The undivided one-half of block No. 28 in Watson's Addition to the City of Portland; the undivided one-half of lots Nos. 5 and 6, block No. 168, in said City of Portland (being on the corner of Sixth and Madison Streets in said city); the undivided one-half of the northwest quarter of section 20, township 1 north, range 2 east, Willamette Meridian; undivided one-half of 33 acres described particularly in deed made to you; lots in what is known as Cedar Hill, and known as my homestead, in said City of Portland, and particularly described in deed made to you by J. Loewenberg and wife, said homestead being subject to a mortgage thereon of $30,000—all said real property being situate in Multnomah County, Oregon. And you are hereby directed to hold the said real property herein last above described as security for said sums of $23,000 due the First National Bank of Portland and $10,000 due the London & San Francisco Bank, Ld., subject, however, to the prior liens and claims thereon held by you. Witness my hand and seal this January 5, 1895.

[Signed] "J. Loewenberg.

"Witness: Joseph Simon."

This instrument was immediately delivered to, and a memorandum thereof made on the books of, the plaintiff corporation, which agreed by parol to hold the title to the property therein described in trust to secure the payment of the amounts due the two banks. The defendants Watson and Leonard a short time thereafter, without knowledge of the instrument of January 5, or of the claims of the banks thereunder, and without making any inquiry of the plaintiff corporation as to the nature and character of its claim under the

deed of June 19, 1893, commenced separate actions at law against Loewenberg to recover the sums of about $15,000 and $4,000, respectively, and caused the property described in such deed to be attached.   They subsequently recovered judgment against Loewenberg, and an order for the sale of the attached property.   Thereafter this suit was brought by the Security Savings & Trust Company, the First National Bank of Portland, and the London & San Francisco Bank, Ld., to foreclose the lien of the trust company for the balance still due on the $100,000 loan; also to foreclose and enforce the instrument of January 5, 1895, from Loewenberg to the plaintiff banks.   Both Watson and Leonard, who were made defendants, answered, setting up their attachments, which they claimed should prevail over the rights of the plaintiff banks under the instrument of January 5, 1895, because they had no knowledge of its existence at the time the levies were made.   The court below held this contention sound, and the plaintiffs appeal.                                REVERSED.

For appellant there was an oral argument by *Mr. Joseph Simon,* with a brief over the name of *Dolph, Mallory, Simon & Gearin* to this effect:

It is firmly settled that a mortgage made in good faith to cover future advancements or indorsements is valid, not only as between the immediate parties to the instrument, but as against subsequent purchasers or incumbrances, if such mortgage be properly executed and duly recorded: *Hendrix* v. *Gore,* 8 Or. 406; *Nicklin* v. *Betts Spring Co.,* 11 Or. 406 (5 Pac. 51, 50 Am. Rep. 477); *Tully* v. *Harloe,* 35 Cal. 302 (95 Am. Dec. 102); *Ackerman* v. *Hunsicker,* 85 N. Y. 43 (39 Am. Rep. 621); *Googins* v. *Gilmore,* 47 Me. 9 (74 Am. Dec. 472); *McDaniels* v. *Colvin,* 16 Vt. 300 (42 Am. Dec. 512); *Ward* v. *Cooke,* 17 N. J. Eq. 93; 3 Pomeroy, Eq. Jur., §§ 1197-8.

A deed absolute on its face, if given to secure future ad-

vances, is valid, although the design of the parties does not appear upon the deed, nor by any evidence in writing: *Gibson* v. *Seymour,* 4 Vt. 518; *Bigelow* v. *Topliff,* 25 Vt. 273 (60 Am. Dec. 264) ; *Shiras* v. *Craig,* 11 U. S. (7 Cranch), 34.

An attaching creditor cannot obtain a title higher or better than the debtor had to the property. Such creditor has no claim or equity in sound reason or law to subject anything which the debtor himself did not own: *Meier* v. *Hess,* 23 Or. 599 (32 Pac. 755) ; *Leach* v. *Hillsman,* 8 Lea (Tenn.), 747; *Wallace* v. *Mahaffey,* 36 Kan. 152 (12 Pac. 705) ; *Black* v. *Long,* 60 Mo. 181 ; *Plant* v. *Smythe,* 45 Cal. 161 ; *Bateman* v. *Backus,* 4 Dak. 433 ; Drake, Attach., §§ 223, 245.

The doctrine of *bona fide* purchaser is not applied to protect an equity, but to protect the legal title against a prior equity. The authorities are all to the effect that the protection of a *bona fide* purchaser does not extend to the purchase of equitable interests : *American Mortgage Co.* v. *Hopper,* 56 Fed. 75 ; *Boone* v. *Chiles,* 35 U. S. (10 Pet.), 211 ; *Dodge* v. *Briggs,* 27 Fed. 166 ; *Elstner* v. *Hoffman,* 32 Ohio St. 358 ; Freeman, Ex., § 344.

For respondent, *J. Frank Watson,* there was an oral argument by *Mr. William T. Muir,* with a brief over the names of *John W. Whalley* and *Fenton & Muir,* to this effect :

An attaching creditor without notice of a valid prior but unrecorded deed made by the debtor to a third person is not affected by such deed, and our attachment law makes such creditor a *bona fide* purchaser for value, the intent being to place the attaching creditor in the same position under both conditions : Hill's Code, § 150 ; *Boehreinger* v. *Creighton,* 10 Or. 42 ; *Gill* v. *Frank,* 12 Or. 507 (53 Am. Rep. 378, 8 Pac. 764) ; *Dickey* v. *Henarie,* 15 Or. 351 (15 Pac. 464) ; *Rhodes* v. *McGarry,* 19 Or. 222 (23 Pac. 971) ; *Riddle* v. *Miller,* 19 Or. 468 (23 Pac. 807).

If the transaction amounts to a security, whatever may be its form, it, in reality, is a mortgage, and this, notwithstanding the grantee may have taken possession and collected the rents: *Gest* v. *Packwood,* 39 Fed. 525, 533; *Lovejoy* v. *Chapman,* 23 Or. 571 (32 Pac. 687); *Teal* v. *Walker,* 111 U. S. 246 (4 Sup. Ct. 420).

The instruments of June 19, 1893, and of January 5, 1895, cannot be associated together to the prejudice of the interests of third persons. A mortgage given to secure certain debts is valid for that purpose only. No additonal indebtedness can be added to it to the prejudice of third parties: *Mc-Caughrin* v. *Williams,* 15 S. C. 505-517; *Upton* v. *National Bank,* 120 Mass. 153-156; *Thomas's App.* 30 Pa. St. 378; *Stoddard* v. *Hart,* 23 N. Y. 556-8; *Perrin* v. *Kellogg,* 38 Mich. 720; *McGready* v. *McGready,* 17 Mo. 597; *Tunno* v. *Robert,* 16 Fla. 738; *Belac* v. *Davis,* 38 Cal. 242; *Gray* v. *Helm,* 60 Miss. 131-141; *Savage* v. *Scott,* 45 Iowa, 130; *Johnson* v. *Anderson,* 30 Ark. 285-291; *Siter* v. *McClanachan,* 2 Gratt. (Va.), 280-300; *Hughes* v. *Worley,* 1 Bibb (Ky.), 200; *Chase* v. *McDonald,* 7 Harr. & J. (Md.), 160-197; *Whiting* v. *Beebe,* 12 Ark. 428; *Ex parte Hooper,* 19 Ves. 477.

After the execution of the instrument of June 19, 1893, Loewenberg's interest in the property mentioned in the pleadings was attachable. The interest of the mortgagor may be attached, whether the mortgage is created by a deed of trust or by a deed absolute on its face: 1 Hill's Ann. Laws, §§ 144-148; *Geary* v. *Porter,* 17 Or. 465-6 (21 Pac. 442); *Sellwood* v. *Gray,* 11 Or. 534 (5 Pac. 196); *Macauley* v. *Smith,* 132 N. Y. 524 (30 N. E. 997); *Bacon* v. *Leonard,* 4 Pick. 277; *Crane* v. *March,* 1 Pick. 131; *Walters* v. *Dafenbaugh,* 90 Ill. 241; *Bank of Colfax* v. *Richardson,* 34 Or. 518, 540 (75 Am. St. Rep. 664, 54 Pac. 359).

## ON PETITION FOR REHEARING.

The case of *Haseltine* v. *Espey,* 13 Or. 301, is cited by the court as establishing the doctrine that secret and undisclosed liens are sanctioned and protected in this state. An examination of that case will show that it is not authority for that statement; the point there decided was that the record did show that the grantee had an interest in the property greater than a mortgage interest, and that, as the public records gave notice of this fact, the actual interest involved was protected. The court did not hold that this actual interest could be used as a cover for subsequent and independent transactions, but only that the instrument was sufficient to protect that one transaction. That was the only question involved, so it could not have been intended to decide the question now before the court.

If persons interested desire to enter into new engagements they occupy the same position they held before the first transaction, and precisely the same formalities must be observed as in the first instance: *Odell* v. *Montross,* 69 N. Y. 499; *Gilbert* v. *Bulkley,* 5 Conn. 262-4 (13 Am. Dec. 57); *Van Kenren* v. *McLaughlin,* 19 N. J. Eq. 187; *Clark* v. *Condit,* 18 N. J. Eq. 358; *Connor* v. *Tippett,* 57 Miss. 594; *Walker* v. *Carlton,* 97 Ill. 582.

No additional indebtedness could be secured on this trust deed to the prejudice of third parties, except in the same manner that the first mortgage was secured: *Van Wagner* v. *Van Wagner,* 7 N. J. Eq. 27-33; *Branchall* v. *Flood,* 41 Conn. 68-71; *Williams* v. *Hill,* 60 U. S. (19 How.), 246-250; *Beardsley* v. *Tuttle,* 11 Wis. 74; *Van Meter* v. *Van Meter,* 3 Gratt. 142; *Turnbull* v. *Thomas,* 24 Fed. Cas. 327; *Doyle* v. *White,* 26 Me. 341 (45 Am. Dec. 110); *Walker* v. *Carlton,* 97 Ill. 582; *Whipperman* v. *Smith,* 96 Ind. 275; *Curle's Heirs* v. *Eddy,* 24 Mo. 117-120 (66 Am. Dec. 699); *Mead* v. *York,* 6 N. Y. 449-452 (57 Am. Dec. 467).

The instrument of January 5, 1895, is incomplete and in-effective as a legal conveyance, so that it could not have been recorded, yet the court holds that by depositing this non-descript instrument, unrecognized and unknown in the law, with the person who had some interest in the property the parties obtained all the advantages that could have been ob-tained by recording a duly executed mortgage.   The tes-timony shows explicitly that this document was made with the intention of keeping it secret, and it is an admitted fact that Watson did not know anything about it.   It is the gen-eral rule that even though a defectively executed conveyance be recorded the record thereof does not impart constructive notice, because only validly executed and properly recorded conveyances possess the requisite quality.   The instrument of January 5, is invalid as a legal instrument.   It fails in every respect to comply with the statutes.   If that instrument had been a valid conveyance and not recorded it would not have given constructive notice.   Being invalid, had it been recorded it would not have imparted constructive notice.   But the instrument being both invalid and unrecorded it is held to give constructive notice. .

This instrument did not create or transfer any interest in the real property referred to.   It is insufficient, under Sec-tions 3002, 3011, Hill's Ann. Laws, and is directly pro-hibited by the statute of frauds.   Section 781, Hill's Ann. Laws, provides that no estate or interest in real property, or any trust or power concerning such property, can be created, transferred, or declared except by operation of law or by a written instrument executed with legal formalities.

This document of January 5, 1895, does not comply with the legal requirements and could not create or transfer any interest in real property, or create a trust regarding the same.

For respondent H. C. Leonard there was a brief over the name of *Nixon & Dolph* to this effect:

The first instrument did not vest any title in the Trust Company and Loewenberg's creditors could attach the property: *Anderson* v. *Baxter*, 4 Or. 105; *Sellwood* v. *Gray*, 11 Or. 534 (5 Pac. 196); *Watson* v. *Dundee Mortgage Co.*, 12 Or. 474, 480 (8 Pac. 548); *Thompson* v. *Marshall*, 21 Or. 171, 176 (27 Pac. 957).

Though the direction contained in the second instrument was binding on Loewenberg, it did not affect the rights of this respondent, who was an innocent *bona fide* purchaser without notice: Jones, Mtgs. (Ed. 1879), § 357, and *Upton* v. *National Bank of Reading*, 120 Mass. 156.

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

The question for decision is one of priority between the claim of the plaintiff banks and that of the defendants Watson and Leonard. The right of the plaintiff corporation to a prior lien for the amount due on the original loan to Loewenberg is not disputed by any of the parties. The instrument of January 5, under which the plaintiff banks claim, although not executed or acknowledged so as to make it a formal mortgage, is, nevertheless, effective as such between the parties and subsequent purchasers or attaching creditors with notice: *Moore* v. *Thomas*, 1 Or. 201; *Musgrove* v. *Bonser*, 5 Or. 313 (20 Am. Rep. 737). Unless, therefore, the defendants Watson and Leonard, as attaching creditors, are entitled to the rights of a *bona fide* purchaser for value, the plaintiff banks must prevail in this suit, because their claim is prior in time, and therefore prior in right. On behalf of the plaintiffs it is insisted that the deed of June 19, 1893, from Loewenberg and wife to the plaintiff corporation, conveyed the legal title to the property therein described, and that no interest remained in Loewenberg which could be levied upon under a writ of attachment; while the contention for the defendants is that the transaction amounted to nothing

more than a mortgage, and simply created a lien upon the
property in favor of the plaintiff corporation for the debt
intended to be secured thereby.   It has long been settled in
this state that a deed absolute in form, but intended by the
parties as security for the payment of money, or the per-
formance of any other legal act, if accompanied by a separate
defeasance, is a mortgage at law *(Hurford* v. *Harned,* 6 Or.
362; *Stephens* v. *Allen,* 11 Or. 188, 3 Pac. 168; *Albany
Canal Co.* v. *Crawford,* 11 Or. 243, 4 Pac. 113; *Wilhelm* v.
*Woodcock,* 11 Or. 518, 5 Pac. 202) ; and this seems to be
the general rule on the subject.   Thus, in 3 Devlin, Deeds
(2 ed.), § 1101, it is stated that, "where the deed and de-
feasance have been executed and delivered at the same time,
and form parts of one transaction, the courts have universally
considered them as constituting a legal mortgage."   And
in *Teal* v. *Walker,* 111 U. S. 242 (4 Sup. Ct. 420), it is said
by the Supreme Court of the United States :   "A deed abso-
lute upon its face, but intended as a security for the payment
of money, is a mortgage, even at law, if accompanied by a
separate contemporaneous agreement in writing to reconvey
upon the payment of the debt."   To the same effect, see, also,
1 Jones, Mtgs. (2 ed.), § 244; *Lanahan* v. *Sears,* 102 U. S.
318.   It is also well settled in this state that a mortgage vests
no title in the mortgagee, but is a mere security for the pay-
ment of a debt:   *Anderson* v. *Baxter,* 4 Or. 105; *Sellwood* v.
*Gray,* 11 Or. 534 (5 Pac. 196).

   1.   From these two rules it would seem necessarily and
logically to follow that a deed absolute in form, made to se-
cure an indebtedness, does not convey the legal title of the
land therein described to the grantee, but is nothing more
than a mere lien thereon in his favor to secure the payment
of the debt.   Such was the opinion of Mr. Chief Justice
Strahan, in *Adair* v. *Adair,* 22 Or. 115 (29 Pac. 193), and
the holding of this court in *Marx* v. *La Rocque,* 27 Or. 45
(39 Pac. 401).   The latter was a suit for partition of real

property. The plaintiff claimed under a deed absolute in form, but intended as a mortgage, and the question was whether he had such an estate in the property as would entitle him to maintain a suit for partition. In deciding the question it is declared to be "the settled law of this state that a deed, though absolute in form, if intended by the parties as a security for a debt, is to be treated as a mortgage, as much so as if it contained a condition that the estate should revert to the grantor upon payment of the debt; and that it vests no title or right to the possession in the grantee, but simply creates a lien or incumbrance on the land,"—citing authorities. "In such case the court looks beyond the terms of the instrument to the real transaction, and, when that is shown, will give effect to the contract of the parties; and, whatever may be the form of the instrument, if it was executed as security for a debt, it will be treated merely as a mortgage, and the title and right to possession will remain in the mortgagor until foreclosure and sale." See, also, *Teal v. Walker*, 111 U. S. 242 (4 Sup. Ct. 420) ; *Shattuck v. Bascom*, 105 N. Y. 39 (12 N. E. 283) ; *Barry v. Hamburg Ins. Co.*, 110 N. Y. 1 (17 N. E. 405). It follows, therefore, that, at the time of the attachments in the actions brought by Watson and Leonard, Loewenberg was the legal owner of the property, and had an interest therein which could be seized under an attachment: *Geary v. Porter*, 17 Or. 465 (21 Pac. 442) ; *Bank of Winnemucca v. Mullaney*, 29 Or. 268 (45 Pac. 796) ; *Macauley v. Smith*, 132 N. Y. 524 (30 N. E. 997).

2. Now, our statute (Hill's Ann. Laws, § 150), provides that "from the date of the attachment until it be discharged or the writ executed, the plaintiff as against third persons shall be deemed a purchaser in good faith and for a valuable consideration of the property, real or personal, attached." Under this section an attaching creditor is given the same standing and placed in exactly the same position as that of

a purchaser from the debtor *(Rhodes* v. *McGarry,* 19 Or. 222, 23 Pac. 971 ; *Riddle* v. *Miller,* 19 Or. 468, 23 Pac. 807 ; *Meier* v. *Hess,* 23 Or. 599, 32 Pac. 755 ; *Osgood* v. *Osgood,* 35 Or. 1, 56 Pac. 1017) ; so that Watson and Leonard, by reason of their attachments, are entitled to the same rights as if they had purchased the property from Loewenberg, without actual knowledge of the instrument of January 5, 1895, and are chargeable only with such notice as the record imports.

3.   The pivotal question in the case, then, is the effect to be given to the record of the deed from Loewenberg to the plaintiff corporation.   It purports on its face to be an absolute conveyance; and an attaching creditor, as well as a purchaser from Loewenberg, was charged with such notice of the claims of the grantee as the record imports, whether he had actual knowledge thereof or not.   At the time the attachments were levied the trust company was in possession of the equitable mortgage of January 5, claiming by authority thereof to hold the property described in the deed to it as trustee to secure the payment of the debts due the two banks.   Therefore, for the purposes of the question now under consideration, the case stands as if the equitable mortgage had been made directly to the corporation.   If the record was not sufficient notice to a purchaser from Loewenberg of the trust company's entire claim, the attachments will, under the statute, take precedence over the rights of the plaintiff banks.   In other words, if the record of the deed imports notice of nothing more than the original transaction of which it was a part, the defendants must prevail.   If, on the other hand, an intending purchaser from Loewenberg would be required, by reason thereof, to ascertain by inquiry *aliunde* the record the nature and character of the trust company's claim to the property, the attaching creditors were not bona fide purchasers, but were chargeable with knowledge of the instrument of January 5, 1895, because, presumably, an

inquiry would have disclosed its existence, and they were so negligent in not making it as to deprive them of the rights of *bona fide* purchasers. Now, the record of an instrument which is duly executed, and entitled to be registered, operates as constructive notice only of the contents of the record, and whatever is deducible therefrom as a matter of law: 15 Cent. Law J. 122; *Frost* v. *Beekman,* 1 Johns. Ch. 288. By the recording act, a party dealing with real property is called upon to search the record, and is chargeable with constructive notice of what it contains within itself, and whatever an inquiry reasonably suggested by the facts recited or alluded to would have disclosed: Webb, Record Title, § 178. But it does not import knowledge of a transaction not a matter of record. The recording of a deed absolute in form, but intended as a mortgage, cannot, in the nature of things, be constructive notice of the real transaction, because it is not disclosed by the record. It is notice, however, of a claim to the property by the grantee, and affords an opportunity for an intending purchaser from the grantor to inform himself of the nature and character of such claim. There is a decided conflict in the authorities as to the effect of recording such a deed in the registry of deeds when the defeasance is not of record. There are some cases holding that it must be treated as an unrecorded mortgage, because the record does not state the truth, and because the object of the registry act is to prevent the enforcement of secret and unrecorded liens: *Friedley* v. *Hamilton,* 17 Serg. & R. 70 (17 Am. Dec. 638). But the rule adopted in this state is that such record is sufficient *(Haseltine* v. *Espey,* 13 Or. 301, 10 Pac. 423), and this must be regarded as settled law, and kept in view in determining the question.

This doctrine, however, does not proceed upon the theory that the record gives notice of the actual transaction, but upon the assumption that the record of the instrument in the registry of deeds, as said by Mr. Jones, is "notice of a greater

interest than he (the grantee) actually has" (1 Jones, Mtgs. [2 ed.], § 548), and therefore cannot mislead an intending purchaser from the grantor to his injury. In short, the condition of the record is such as to put one dealing with the grantor upon inquiry as to the grantee's claim. If he contends, or has reason to believe, that the deed is not what it purports to be, it is his duty to pursue the inquiry, and ascertain the actual claim of the grantee, and whether, notwithstanding the deed, the grantor still retains an interest in the property, and, if so, what it is. The purchaser of real property may, of course, rely upon the title as it appears of record, and will be protected against unrecorded conveyances, outstanding equities, secret liens, and conditions of which he has no notice. It is for this reason that a *bona fide* purchaser from the grantee, in a deed recorded as such, but intended as a mortgage, is protected: Hill's Ann. Laws, § 3029. But one who deals with real estate as the property of a party who does not have the record title is conclusively chargeable with notice of all the rights of the holder of such title. He cannot claim to be a purchaser in good faith when the record shows that the title to the property is not in his grantor, but in some other party. The contention that giving this effect to the registry of a deed absolute in form will have a tendency to encourage secret and unrecorded liens upon real property does not appeal to us with much force. It is a cogent argument against the doctrine that the recording of a deed intended as a mortgage in the registry of deeds, is a sufficient protection to the mortgagee. When that rule is once established, however, as it is in this state, and thus secret and undisclosed liens are sanctioned and protected, the argument loses its potency. The record of such an instrument is notice of the greatest possible title to real estate, and it could not be made any more apparent by recording subsequent mortgages in favor of the grantee upon the same property. The record is sufficient to put an intending pur-

chaser from the grantor upon inquiry, as it indicates that such grantor has no title whatever; and, if he does not pursue the investigation, he is, nevertheless, chargeable with all the facts such inquiry would have elicited.    There is no merit, it seems to us, in the contention that inquiry might not disclose the true condition of the title.    If it should not, the inquirer would have performed all the duty the law imposes upon him, and would be protected against the claims of the grantee.    A grantee in a deed given as security for a debt is bound to the utmost good faith towards a party dealing or intending to deal with the property as that of his grantor, and, if he does not carefully and truly disclose the true nature of his security, his rights will be postponed to those of subsequent attaching creditors or purchasers: *Geary* v. *Porter,* 17 Or. 465 (21 Pac. 442).    Now, in this case, the deed from Loewenberg to the plaintiff corporation did not give notice of the nature of the real transaction, nor of the claim of the grantee therein, but it disclosed that the property had been conveyed to it unconditionally.    It seems to us, therefore, that a party claiming through Loewenberg by right acquired subsequent to the recording of the deed could not refrain from making inquiry as to the nature of the grantee's claim under such deed at the time his right attached, and so be entitled to the protection accorded a *bona fide* purchaser.    It follows from these views that the decree of the court below must be reversed, and it is so ordered.          Reversed.

Mr. Justice Wolverton, dissenting.

That the transaction of June 19, 1893, between Julius Loewenberg and wife and the Security Savings & Trust Company, whereby the former conveyed to the latter certain real property by deed absolute upon its face, and the latter executed and delivered to the former a defeasance conditioned upon the repayment of a sum of money not to exceed $100,000, to be advanced by the latter to the former, consti-

tutes a mortgage, there can be no doubt.   The sole purpose
of the deed was to secure a loan.   This is clearly manifested
by the defeasance.   When the two instruments were duly
executed by the respective parties, and delivered, the trans-
action was completed without extraneous limitations or re-
strictions.   The recording of the deed gave constructive no-
tice of this transaction, because an inspection of the record
would impart notice of a larger estate than the trust com-
pany really possessed, and made it, therefore, incumbent
upon strangers or third persons to inform themselves by
proper inquiry if they would know the exact nature thereof.
This was not necessary so far as the defendant Watson was
concerned, for he had personal knowledge thereof from its
very inception.   It does not appear to have been shown that
Leonard had other notice than such as he is chargeable with
by the record.   But in either case the question comes to this:
Does the fact that the deed was recorded impart constructive
notice of subsequent unrecorded transactions between the par-
ties in modification of the first, or require inquiry touching
them by parties dealing with the property?   Or, to state it
precisely within the facts of the case:   Does the recorded
deed impart notice of a subsequent unrecorded equitable
mortgage given to secure a further and different demand
(for such is the legal effect of the instrument last executed
by Loewenberg to the trust company), or require purchasers
or attaching creditors to make inquiry at their peril, further
than to ascertain the nature and conditions of the original
transaction?   I am strongly impressed that the consequences
of recording the deed without the defeasance are not so far-
reaching.   It is well understood that the terms of a mortgage
cannot be altered, after record, by secret agreement or under-
standing between the parties to it, so as to add to the debt,
or create further incumbrances, to the prejudice of third par-
ties dealing with the property.   This is elementary, and
needs no elucidation.   If the defeasance had been recorded

along with the deed, there would have been a disclosure of
the entire transaction as it stood when fully consummated,
so that it would have been just as difficult to change it, or in-
crease the amount of the liability or incumbrance under it, as
in the case of an ordinary mortgage duly recorded.

Now, can it be that this partially disclosed and partially
concealed transaction gives any greater latitude or license to
the parties thereto to change or modify it to the prejudice of
others than if all its conditions had been fully revealed by
promptly recording the defeasance at the time of its execu-
tion? If so, the recording acts become a snare, rather than
a protection. Mr. Watson, as we have seen, had actual
knowledge. This was all that could possibly have been im-
parted by a full record. He was notified by the terms of the
defeasance that the obligation might become less by payment,
but he had no kind of notice that it would be increased, and
the fact that such defeasance was withheld from the record
did not so admonish him. He had a right, therefore, to deal
with the property relying upon that particular knowledge,
without any further inquiry whatever, if he so desired; and
this is just what he did. Much less can it be said that, for
his own protection, he was in duty bound to make further
inquiry concerning subsequent incumbrances, imposed by
secret, separate, and distinct agreements or conveyances hav-
ing no relation to the first. Watson's previous knowledge,
however, is only an incident in the case, but it serves very
aptly and strongly to elucidate the principle involved. Mr.
Leonard and other third parties could not be required to
possess themselves of any fuller knowledge than Watson had
from the beginning, and thus it becomes manifest that the
inquiry is not exacted in any event beyond the ascertainment
of the nature and conditions of the single transaction of
which the recorded deed forms a part. It is with reference
to this transaction alone that third parties deal at their peril
when they have constructive notice by the record. They are

not even bound to make inquiry touching the precise terms and conditions of the original transaction; but, if they deal with the property, they must do so subject to whatever incumbrances it imposes, because of such constructive notice. Not being bound to make such inquiry, they are certainly not chargeable with knowledge of such disclosures as an inquiry would have developed of any subsequent modification of the mortgage or of subsequent unrecorded incumbrances which may have been created by independent agreement or contract if it had been pursued in any given direction. It was not the purpose of the recording acts to compel inquiry, but rather to render it unnecessary further than to consult public records. The mortgage, whatever may be its form, can give but one kind of interest in this state—that is, a lien upon the property for the demand for the securing of which it was created; and to say that the effect of its partial record will impart notice or compel inquiry of the mortgagee for subsequent mortgages or incumbrances, or, if carried to its natural consequence, for conveyances of the legal estate which are purposely withheld from the public, seems contrary to the purpose, and is carrying constructive notice of such a record far beyond any reasonable intendment of the recording act. It would permit the execution of a mortgage by deed and separate defeasance to secure an insignificant sum, covering vast estates in realty, and thereafter secret dealings and traffic with the property between the parties thereto, as fully as they may desire, and all at the peril of purchasers and attaching creditors if they do not inquire of the mortgagee touching what incumbrance or what estate he presently has in the property. This construction ignores the idea that all conveyances or mortgages must be made a public record, or else they are void against purchasers in good faith, or without notice, for a valuable consideration: Hill's Ann. Laws, § 3027. For these reasons I am unable to concur in the conclusion reached by the prevailing opinion. REVERSED.