**HAWKINS v. SAVAGE et al.**
No. A-6011.

District Court, Alaska.
Third Division, Anchorage.
March 9, 1953.

As Amended March 19, 1953.

Bldg. Co., 35 Wash.2d 299, 303, 212 P.2d 796.

8. See Poundstone v. Whitney, 189 Wash. 494, 500, 65 P.2d 1261.

616

Bell & Sanders, Anchorage, Alaska, for plaintiff.

No appearance by defendant.

Seaborn J. Buckalew, U. S. Atty., Anchorage, Alaska, for intervenor.

DIMOND, District Judge.

This is a contest between the plaintiff suing and attaching to recover indebtedness due to her from the defendant and the United States coming in as an intervenor and seeking to collect taxes due to it from the defendant by application of the attached property. The property attached and upon which the intervenor seeks to enforce its lien, is in the sum of $2,341.87 in money owing from the garnishee, J. B. Warrack Co., to the defendant. It is not asserted or suggested that any other property is involved.

Priority turns upon the sequence of the various actions taken and upon the nature and effect of the attachment as governed by the general tax laws and the laws concerning attachments in the Territory of Alaska. The chronological sequence may be stated as follows:

December 27–28, 1949: Assessment lists received by the Collector of Internal Revenue and notices and demands made upon defendant taxpayer, Lawrence Savage, covering withholding and Federal Contributions Act taxes due for the quarter ended 9–30–49 in the principal sum of $2,711.-90, plus penalties, interests and costs legally due thereon.

February 27, 1950: Plaintiff Jewel Hawkins commenced this action against the defendant taxpayer, Lawrence Savage, seeking to recover on NSF checks issued by the defendant in the sum of $2,341.87 plus costs and attorneys' fees, and filed an undertaking and attachment and affidavit for attachment and writ of attachment was issued.

April 19, 1950: Writ of attachment served on J. B. Warrack Co., garnishee,

who made return saying that said J. B. Warrack Co. held money in the sum of $2,341.87, due to the defendant, Lawrence. Savage.

June 12, 1950: Notice of levy for taxes due the United States in the principal sum of $2,969.05 was served on J. B. Warrack Co. by the Collector of Internal Revenue.

June 13, 1950: Notice of tax lien was filed with the United States Commissioner at Anchorage, Alaska.

June 22, 1950: Second assessment list was received by the Collector of Internal Revenue and notice and demand was made on the defendant, Lawrence Savage, covering withholding and Federal Insurance Contributions Act taxes due for the period ended June 16, 1950, in the sum of $632.47.

June 30, 1950: Second notice of tax lien was filed with the United States Commissioner, Anchorage, Alaska.

June 30, 1950: Second notice of levy was served on J. B. Warrack Co., covering second assessment of $632.47.

J. B. Warrack Co., as recited above, acknowledges that it is indebted to the defendant, Lawrence Savage, in the total sum of $2,341.87, but in view of this litigation, the Company has retained possession of the money to be paid out to the person designated by the Court, or will pay the same into Court in this action upon the order of the Court. The plaintiff's claim against defendant is taken as confessed by default and the Court has ordered entry of judgment in favor of the plaintiff and against the defendant for the amount claimed but has deferred determination as to the status of the fund attached.

The Government asserts priority under the following quoted provisions of the Federal Statutes:

"Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debt-

or are attached by process of law, as to cases in which an act of bankruptcy is committed." 31 U.S.C.A. § 191, Section 3466, Rev.Stat.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 3670.

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 3671.

"(a) Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice * * * has been filed by the collector—

"(1) In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or

"(2) In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice; * * *." 26 U.S.C. § 3672.

Section 3466 R.S. embraced in Title 31 § 191, U.S.C.A. needs no extended consideration. This applies only to insolvent debtors. There is nothing in the pleadings in this case to indicate insolvency of the defendant, Lawrence Savage, even though one may guess from the facts stated that he may well be and have been insolvent. As early as 1828, in Conard v. Atlantic Insurance Company of New York, 1 Pet. 386, 26 U.S. 386, 7 L.Ed. 189, the Supreme Court

held that mere inability to pay debts is not insolvency within the meaning of this statute, and that insolvency must be manifested in one of the three ways listed above in Section 3466. The same Court expressed the same view in Bramwell v. U. S. Fidelity & Guaranty Co., 1926, 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368. A discussion of Government priority for taxes may be found in 9 Merten's Laws of Federal Income Taxation, 573 et seq. In the absence of any allegation of insolvency, no further consideration need be given to the possible application of 3466, except as incidental to the force and effect of Title 26, Sections 3670, 3671 and 3672, U.S.C. also quoted above.

Coming now to the three sections of Title 26 mentioned, we may first consider the plaintiff's contention that the liens were improperly recorded in the Commissioner's Office. That argument is clearly without merit. Plaintiff says that the Territorial law makes no provision for filing such liens in any other office, and therefore, the only proper place for filing is that of the Clerk of the United States District Court. The answer lies in the Act of the Territorial Legislature of 1933, Chapter 94 of the Session Laws of Alaska of that year, carried forward into Chapter 9, Title 48, Section 48–9–1 et seq., Alaska Compiled Laws Annotated, 1949. The title of the Act is "An Act Authorizing the filing of notices of liens for taxes payable to the United States of America and certificates discharging such liens, and to make uniform the law relating thereto." The Treasury Department has indicated its approval of this procedure. I.T. 2894, C.B. XIV–1, page 239.

The Government's claims of liens were filed in the Office of the United States Commissioner and ex-officio Recorder for the Anchorage Precinct, Third Judicial Division, Territory of Alaska, and there was no need for additional filing in the Office of the Clerk of the District Court.

The plaintiff urges that there is no pleading or proof of demand for the payment of the tax by the intervenor which appears to be indispensable under section 3670. While no demand is pleaded, the proof adequately shows demand, and under the liberal provisions of Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C., the complaint in intervention may be considered as amended to embrace the averment of demand. To dispose of the case upon lack of demand because not pleaded would scarcely be in harmony with the elementary principles of justice. The demand must have been made because it was sufficiently proved.

That brings us to the really crucial point, that is, whether the attachment made by the plaintiff of the money due the defendant in the hands of the garnishee should take priority over the lien of the intervenor, United States, arising under Section 3670 et seq., supra.

Counsel for the intervenor urge that the Government's lien arose when the assessment lists were received by the Collector of Internal Revenue on December 27, 1949, and that despite the additional provisions of law contained in Sections 3671 and 3672, that lien is entitled to priority and must prevail against any attachment made at a later date. Indeed the Government's claim is so far-reaching as to require that all adverse claims whether in favor of a mortgagee, pledgee, purchaser or judgment creditor, as set out in section 3672, must yield to the priority of the lien of the United States arising under section 3670 if that lien arose or came into being at a date prior in time to the origin of any "valid" claim made by any person under section 3672. To sustain such a theory it would be necessary to contradict the force and effect of the legislative history of the statutes mentioned. Section 3672 was enacted to protect what are commonly known as innocent purchasers for value, the word "purchasers" embracing all those classes of persons who may deal in the property of a debtor while other and secret liens against that property may exist. Neither the decision of the Supreme Court in United States v. Security Trust & Savings Bank of San Diego, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, nor that of our own Court of Appeals in MacKenzie v. United States, 9 Cir., 1940, 109 F.2d

540 sustains such a view of the law. In fact, the inferences to be rightly drawn from Judge Stevens' opinion in the MacKenzie case leads one to the opposite conclusion. Two recent cases are deserving of note, Sunnyland Wholesale Furniture Co. v. Liverpool & London & Globe Ins. Co., D.C.N.D.Tex.1952, 107 F.Supp. 405, and U. S. v. Acri, D.C.N.D.Ohio, 1952, 109 F.Supp. 943; Commerce Clearing House Standard Federal Tax Reporter, Sec. 9104, p. 47108.

This is one of the numerous cases where definitions of words and terms may be not only helpful but decisive. Some thousands of years ago, the Chinese sage and philosopher, Confucius, pointed out and emphasized not only the high desirability but the overriding need of exact definitions when considering matters of law. When asked as to the first reform he would introduce upon taking up the management of Government, it is reported that he replied, "I would begin by defining terms and making them exact." Perhaps even now that is not only good philosophy but also sound law.

For our present requirements, an adequate review of the legislative history of sections 3670, 3671 and 3672 is to be found in Justice Jackson's concurring opinion in the Security Trust & Savings Bank case, supra, and so we know that section 3671 and section 3672 were enacted to give relief from the manifestly unjust effects of the rigid application of section 3670.

Arrival at a correct conclusion will be speeded by defining two words, "arise" and "valid" used in the relevant statutes. In section 3671, reference is made to the date when the "lien shall arise". What is meant by the word "arise"? The answer is relatively simple. A lien "arises" at the time it comes into being or is created. Another word might have been used by the draftsman but the word "arise" brings about no difficulty.

However, in section 3672, we find that "Such liens shall not be valid" as against certain categories of persons or parties until "notice * * * has been filed by the collector", thus we must determine what is

meant by the word "valid". Common knowledge as well as the dictionaries tell us that the word "valid" has several meanings. 2 Bouv. Law Dict., Rawle's Third Revision, p. 3387 says, "Having force; of binding force; legally sufficient or efficacious; authorized by law". The Oxford English Dictionary gives in part the following: "Good or adequate in law; possessing legal authority or force; legally binding or efficacious". In Ballentine we find, "Effective; operative; not void; subsisting; sufficient in law". And coming last to Webster's International Dictionary, the definition of "valid" includes, "having legal strength or force; * * * legally sufficient or efficacious; incapable of being rightfully overthrown or set aside * *".

█ The reasonable conclusion, therefore, is that the lien created by section 3670, which *arises* at the time the assessment list is received by the Collector as set out in section 3671, has no binding force, no legal authority, is not legally sufficient or efficacious, and lacks the authority of law unless and until it is recorded as provided in section 3672. This is not a mere exercise in logomachy or semantics, or akin to the sometimes disputed visions of telekinesis, but the inevitable conclusion attained through resort to exact definition in order to determine the construction that should rightfully and logically be placed upon the terms used by a legislative body in making law on a subject of consequence.

It is therefore here held that the plaintiff in this action is entitled to prevail if she falls within one of the categories of persons who are protected by section 3672. Without any extended citation of authority or resort to the philosophical niceties of the logic of Aristotle or Emmanuel Kant, it is at least reasonably certain that in order to secure priority as against a tax lien of the United States, the adverse claimant for the property involved in this case, the plaintiff, Hawkins, must fairly and reasonably be embraced within one of the four classes whose rights are preserved by section 3672, namely, as a mortgagee, a pledgee, a purchaser or a judgment creditor. In all of this it is to be remembered that the notice

of the Government lien was *not* filed in the local recording office until *after* the attachment was made by the plaintiff.

Obviously, the plaintiff is not a mortgagee, or a pledgee, or a judgment creditor, because the plaintiff's judgment could not possibly have been entered after the Government filed its notice of lien as required by section 3672; and so the plaintiff cannot prevail in this action unless under the law, she was a "purchaser" of the property before the Government's lien was filed for record on June 13, 1950. This leads us to the nature of attachment under the laws of Alaska.

The statutes of Alaska concerning attachments are to be found in Article 4, sections 55–6–61 to and including section 55–6–71 of A.C.L.A., but the sections which have immediate and intimate bearing on the question involved are section 55–6–61 and section 55–6–67 of A.C.L.A. The first section reads as follows:

"§ 55–6–61. Cases in which plaintiff may attach: Time. The plaintiff, at the time of issuing the summons, or at any time afterwards, may have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, unless the defendant give security to pay such judgment, as in this article provided, in the following cases;

"First. In an action upon a contract, express or implied, for the direct payment of money, and which is not secured by mortgage, lien, or pledge upon real or personal property, or, if so secured, when such security is insufficient to satisfy a judgment for the amount justly due the plaintiff.

"Second. In an action upon a contract, express or implied, against a defendant not residing in the Territory." Section 55–6–67 is quoted below:

"§ 55–6–67. Plaintiff's rights against third persons: Liability of persons failing to transfer property to marshal. From the date of the attachment until it be discharged or the writ executed, the plaintiff as against third persons shall be deemed a purchaser in good faith and for a valuable consideration of the property, real or personal, attached, subject to the conditions prescribed in the next section as to real property. Any person, association, or corporation mentioned in subdivision three of the section last preceding, from the service of a copy of the writ and notice as therein provided, shall, unless such property, or debts be delivered, transferred, or paid to the marshal, be liable to the plaintiff for the amount thereof until the attachment be discharged or any judgment recovered by him be satisfied."

The sections above quoted are a part of the Act of Congress of June 6, 1900, 31 Stat. 415, an act making further provisions for the civil Government of Alaska. They are in no sense enactments of the Territorial Legislature, and, therefore, this case distinguishes itself from cases like those cited by counsel in which the Federal Courts are under the duty of construing as Federal questions the prior construction which may have been given by State Courts to statutes with respect to attachments and other claims for security operating counter to the interest of the United States in collecting its taxes under the laws of the United States. While in such cases it may be considered that the Congress of the United States in passing our existing laws concerning attachments acted as a territorial legislature, we must yet remember that our attachment statute is part of an Act of the United States Congress even though of local application only. Now, the Congress of the United States has said in Section 55–6–67 that "From the date of the attachment until it be discharged or the writ executed, the plaintiff as against third persons shall be deemed *a purchaser in good faith and for a valuable consideration* of the property, real or personal, attached * *". (Emphasis supplied.) Therefore, we find that under our laws so enacted by Congress, the plaintiff who attaches is and must be considered by the Courts as a purchaser in good faith and for a valuable consideration of the property attached. Hence, it seems plain that the plaintiff in this case brings herself clearly within the provisions

of Section 3672 as a *purchaser* of the property. She is not a lien holder, she is not to be thought of as having inchoate right, but she is a purchaser, and not only a purchaser, but a purchaser in good faith and for a valuable consideration. No language could be more precise and none could be more emphatic for the support of the plaintiff's rights.

In this connection, it is deserving of note that the provisions of our procedural code with respect to attachments, like most of the other matter contained in the act of June 6, 1900, was adopted verbatim from the laws of Oregon. Section 55–6–67 A.C. L.A.1949 is to be found in 1 Hill's Oregon Laws, Section 150, and is carried forward into the current laws of Oregon, 1 Oregon Compiled Laws Annotated, section 7–207, the wording of which is identical with that of our statute.

■ The Supreme Court of Oregon has uniformly held that under the provisions of the attachment law mentioned, an attaching creditor is given the same position as that of a purchaser. The following are examples of the cases on the subject: Jennings v. Lentz, 1908, 50 Or. 483, 93 P. 327, 29 L.R.A.,N.S., 584; Security Savings & Trust Co. v. Loewenberg, 1900, 38 Or. 159, 62 P. 647. More important still, the rule was well established in Oregon before the passage of the Act of June 6, 1900. Boehreinger v. Creighton, 1881, 10 Or. 42; Riddle v. Miller, 1890, 18 Or. 460, 23 P. 807; Rhodes v. McGarry, 1890, 19 Or. 222, 23 P. 971; Meier v. Hess, 1893, 23 Or. 599, 32 P. 755. It is at least to be presumed that when our attachment statute was thus adopted from the laws of Oregon it was so adopted with the construction which had theretofore been placed upon it by the Supreme Court of that State, a construction which has never been departed from by that Court so far as known.

■ The plaintiff in this action under the law is a purchaser of the money attached against "third persons" and those third persons in the absence of legislation cannot fail to embrace the United States. Accordingly, plaintiff's claim as to the property attached is entitled to priority of payment and the tax lien of the United States is subordinate thereto.

Plaintiff may have judgment against the defendant for the sum of $2,341.87, and the attachment made of that sum in the hands of J. B. Warrack Co., garnishee, shall be paid to the plaintiff in satisfaction of the judgment.

The lien of the United States, intervenor, on the funds so attached is subject and subordinate to the attachment lien of the plaintiff and to the judgment which may be rendered herein, and the attached money shall be paid to the plaintiff upon the judgment so rendered herein free and clear of all liens of the intervenor thereon.

■ The intervenor may not have judgment in this action against the defendant for the amount of its tax lien. No personal judgment may be rendered herein in favor of the intervenor and against the defendant for the reason that no personal service of the summons issued upon the complaint in intervention, or of the summons issued upon the original complaint, in this action was made upon the defendant within the Territory of Alaska and hence recovery must be confined to the property attached and thus brought within the jurisdiction of the Court; and all of the attached property under the judgment to be rendered herein in favor of the plaintiff shall be applied in payment of that judgment. Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565.