## Deckard Estate

*Enoch C. Filer,* for accountant.

*Jackson D. Magenau,* for assignee.

*Joseph A. DeSantis,* for judgment creditor.

ROBERTS, P. J., February 3, 1955.—Decedent died testate on November 19, 1953, and letters were duly issued on December 21, 1953. On August 13, 1954, the executrix filed a first and final account, showing a balance of $4,723.79 for distribution, now before the court for audit.

Residuary legatees, William M. and Robert M. Deckard, grandsons of decedent, are each entitled to one half of the balance. The legacy of William M. Deckard (in possession of accountant) is presently subject to three claims, whose total far exceeds the amount of his interest. Hence, we are here concerned with priorities in payment from this fund. The rival claims are:

1. Judgment of Huldah M. Kendig, entered against William M. Deckard on January 4, 1954, attachment execution served on fiduciary January 6, 1954 (debt interest and costs), $1,404.22.

2. Assignment and bill of sale by William M. Deckard to Heirs Adjustment Service of $1,400 of his interest, dated January 15, 1954, filed with clerk of orphans' court on January 22, 1954.

3. Notice of Federal tax lien, filed July 15, 1954, against William M. Deckard in amount of $3,763.62 for unpaid withholding and employment taxes (assessment lists received by Collector of Internal Revenue in January, March, September and December 1952 and February 1953).

Notice of tax lien of the United States was filed in the prothonotary's office subsequent to attachment execution and filing of the assignment. We must,

therefore, determine whether the lien of the United States enjoys priority in payment over either or both of the other claimants. Section 3466, Revised Statutes, 31 U. S. C. §191, provides:

"Whenever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The above is merely a priority statute and does not create a lien: Bramwell v. U. S. Fidelity Co., 269 U. S. 483. It does, however, require that debts owed the United States be satisfied first whenever the taxpayer is insolvent and the insolvency has been shown by one of the designated ways. Taxes are debts within the meaning of the section and are subject to its protection: Price v. United States, 269 U. S. 492. By definition, the section limits the priority of the United States to debts due from insolvents upon commission of a specified act of insolvency. A concurrence of insolvency and the commission of a definitive act (as recited in the section), is a prerequisite to priority. Mere inability to pay debts is not insolvency within the meaning of the section. Insolvency, for this purpose, must be manifested in one of the three ways listed, the insolvent debtor's assets must have passed into the hands of some administrative officer or agency for distribution to creditors: Hawkins v. Savage et al., 110 F. Supp. 615. Here we have no evidence indicating insolvency nor the commission of a specified act, therefore this section is not applicable and no priority is thereby established.

We must now consider the tax lien given the United States by sections 3670 and 3671 of the Internal Reve-

nue Code, 26 U. S. C. Internal Revenue Code, §§3670, 3671. Section 3670 provides that if any person liable to pay a tax refuses to pay it after demand, the amount, ·penalties and costs shall be a lien in favor of the United States, ". . . upon all property and rights to property, whether real or personal, belonging to such person." Section 3671 provides that ". . . the lien shall arise at the time the assessment list was received by the collector (now director) and shall continue until the liability for such amount is satisfied or becomes unenforcible· by reason of lapse of time".

Section 3672 of the same code, 26 U. S. C. §3672 provides, in relation to the lien:

"Section 3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors. ·

"(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the collector . . .", in the office in which the filing of such notice is authorized by the law of the State in which the property, subject to lien, is situated.

Prior to the enactment of section 3672 the tax lien of the Government was valid, even against the rights of a purchaser of real estate in good faith who purchased without notice of the Government's existing unrecorded tax lien: United States v. Snyder, 149 U. S. 210. Congress, under its constitutional power to lay and collect taxes, may provide that taxes due to the United States shall have precedence and be a first or paramount lien: County of Spokane, Wash., et al., v. United States, 279 U. S. 80. Likewise, Congress may subordinate its priority as it did by section 3672, as to mortgagees, pledgees, purchasers, or judgment creditors who have perfected a lien interest in the property of a delinquent taxpayer prior to the filing of tax claim of the United States.

Congress did not place the United States ahead of these four classifications and as to them appeared satisfied to rely upon the well-settled principle which ordinarily covers priority of liens; that the first in time is first in right, and, in the absence of statutory direction to the contrary, is entitled to satisfaction out of the property to which it is attached before subsequent liens which bind the same property. In Meyer Estate, 159 Pa. Superior Ct. 296, 301, it was held that the prior judgment creditor prevailed over the later tax lien of the United States.

Here, although the tax lien arose when the assessment lists were received by the collector (in 1952 and 1953), the notice of tax lien was not filed in the prothonotary's office until some six months after the lien of the judgment creditor had been perfected. We must, therefore, conclude that under the statutory exceptions of section 3672, the lien of the judgment creditor being first in time prevails over the unfiled lien of the Government and is not subject to its priority. The prior judgment creditor takes precedence over the later lien of the United States and in case of conflict the lien of the United States must under these circumstances yield.

The remaining question for our determination is whether the tax lien of the United States (which arose in 1952-53) filed July 15, 1954, is superior to and entitled to priority over the assignment filed January 22, 1954. This determination depends on whether the assignee, in this instance, is accorded the status of a "purchaser" under section 3672. If so, the assignee prevails over the tax lien, otherwise the assignee is subordinated to the priority of the tax lien.

The word "purchaser" is not defined by the statute. We must, therefore, determine its meaning under our law: United States v. Rosebush et al., 45. F. Supp. 664. In our view, the term "purchaser" as used, em-

braces every person to whom any interest or estate is conveyed for a valuable consideration. One who acquires property or an interest in property by his own act or agreement for a consideration is a purchaser. In National Refining Co. v. United States, 160 F. 2d 951, an assignee who gave valuable present consideration was held to be a "purchaser" within the meaning of section 3672. To the same effect is Grossman et al. v. City of New York, 66 N. Y. S. 2d 363. In Tildesley Coal Co. v. American Fuel Corp., 130 W. Va. 720, 45 S. E. 2d 750, it was held that one who acquires property under a bill of sale is a "purchaser" within the meaning of section 3672 and holds such property free of the tax lien of the United States where notice of such lien was not filed prior to the effective date of the bill of sale. Likewise, in Cranford Co. v. L. Leopold Co. et al., 70 N. Y. S. 2d 183 (affirmed by the Court of Appeals of the State of New York, 298 N. Y. 676), an assignee by operation of a State statute was treated as a "purchaser" under the statutory exceptions and protected against the unrecorded tax lien of the United States. See also United States v. Preferred Contractors, Inc., et al., 122 F. Supp. 219.

The assignment, filed months prior to the notice of tax lien, is itself labeled "Assignment and Bill of Sale" and identifies William M. Deckard as "Seller" and the assignee as "Buyer." Consideration is recited for the transfer by seller to buyer of $1,400 in the designated fund. The instrument, by its specific language, creates an immediate and irrevocable right in buyer to the sum so transferred. The record indicates that the assignee gave value for the assignment and bill of sale and that there is no evidence to the contrary. In our opinion, the assignee under this writing clearly falls within the definition of a purchaser; the assignee here is a "purchaser" within the mean-

ing of section 3672 and is entitled to the statutory protection against the lien of the United States filed subsequent to the assignment. Such tax lien is not valid against a "purchaser" until certain recording and filing requirements are met. Failure to comply in this respect, under applicable State law, places the claim of the United States in a subordinated position to the excepted class of creditors, that is, mortgagees, pledgees, purchasers and judgment creditors. The issue of priority must, therefore, be determined in favor of the assignee and the tax lien subordinated to the assignment.

The assignee's right, being subsequent to attachment execution, distribution to assignee must follow payment to judgment creditor. The total of the two claims (both prior to lien of the United States) more than exceed the share of William M. Deckard. That fund being exhausted, there remains nothing available for payment to the United States. . . .